[No. 16758.  Department Two.  March 16, 1922.]

Ellis-Mylroie Lumber Company (formerly Rogers
Mylroie Lumber Company), *Respondent*, v. P. T.
Bratt *et al., Defendants*, St. Luke's Hospital,
*Defendant and Appellant*, Commercial Sash
& Door Company *et al., Interveners and
Respondents*, United States Fidelity
& Guaranty Company, *Defendant
.and Appellant*.[1]

Mechanics' Liens (40-1)—Proceedings to Perfect—Notice to
Owner. A materialman's notice of intention to the "owner" of the
premises is sufficient where it was addressed to and received by
Dr. W. as an individual who was president of, and had the general
management of the owner, a corporation, and the building permit
had been issued in his name.

Same (65)—Claim of Lien—Amendment. Where a contractor
had been doing business in the name of a construction company, a
notice of intention to claim a lien for materials furnished at the
request of such company may be amended at the trial to show
that it was at the request of the contractor; the rule of liberal con-
struction applying to notice of intention as well as to the notice of
lien.

Same (45, 47)—Claim of Lien—Ownership of Property. A mate-
rialman's claim of lien sufficiently states the name of the owner or
reputed owner, although it includes as owners two persons who
have no interest in the property.

Same (45, 54)—Claim of Lien—Designation of Contractor. A
materialman's claim of lien sufficiently designates the person to
whom the material was furnished although it gives the name of
but one of the three contractors.

Same (40-1)—Proceedings to Perfect—Notice to Owner. A no-
tice of intention to claim a lien, addressed to the president of the
owner in care of the architect for the building, and by him received
and delivered to the president, is sufficient.

Same (55)—Notice—Terms of Contract. There is no merit in
an objection to a lien notice because of no evidence of the terms of
a subcontract, where the notice followed the requirements of the

[1] Reported in 205 Pac. 398.

statute with the additional clause that one B. was a subcontractor, and the architect testified that the materials were furnished by the claimant.

SAME (32)—RIGHT TO LIEN—CONTRACTORS—SERVICES OF WORKMAN—MACHINES. A lien may be claimed by one who furnished to the contractors a sanding machine and a man to operate it under a contract to pay $2.50 an hour for the machine and man.

SAME (341)—RIGHT TO LIEN—MODIFICATION OF CONTRACT—EXTRAS. Contractors are not entitled to a lien of ten per cent upon extra work performed on written orders, under a contract allowing same in case of extras furnished under an emergency, where there was no emergency, but the extras were furnished under a clause providing for a written notice and prior agreement as to the price of the extras; there having been no waiver of the terms of the contract.

Cross-appeals from a judgment of the superior court for King county, Hall, J., entered April 6, 1921, upon findings in favor of certain lien claimants, in an action to foreclose a mechanics' lien, tried to the court. Affirmed.

*McClure & McClure,* for appellant United States Fidelity and Guaranty Company.

*Bausman, Oldham, Bullitt & Eggerman,* for appellant St. Luke's Hospital.

*C. A. Schneider* and *Thos. Bain,* for appellants Bratt, Headrick & Headrick.

*Alexander, Bundy & Swale,* for respondent Ellis-Mylroie Lumber Company.

*Riddell & Brackett* and *Dwight N. Stevens,* for respondent F. T. Crowe & Company.

*Carl J. Smith (Harry Ellsworth Foster,* of counsel), for respondent Edwin Strom.

*Elias A. Wright* and *Sam A. Wright,* for respondent Commercial Sash & Door Company.

*Roberts & Skeel* and *J. J. Geary,* for respondent J. W. Merriman.

MAIN, J.—The plaintiff brought this action for the purpose of foreclosing a lien for material furnished in the construction of a building. Certain other lien claimants, the contractors, the bonding company and the owner of the building were made parties to the action. The trial resulted in findings of fact, conclusions of law and a judgment sustaining the right of a number of lien claimants to recover. From this judgment, the bonding company appeals, and the contractors prosecute a cross-appeal.

The statement of the case in the appellant's brief is correct and will be substantially adopted. On June 5, 1919, John W. Wilkins and wife, being the owners of two lots in the city of Seattle, conveyed the same to St. Luke's Hospital, a corporation. The deed was filed for record on June 11 of that month. On June 23, St. Luke's Hospital entered into a contract with Phillip T. Bratt, J. R. Headrick and R. R. Headrick, as contractors, for the erection on the property of the hospital building. The United States Fidelity and Guaranty Company became surety upon the bond of the contractors. The building was completed and accepted about July 13, 1920. This action was begun by Ellis-Mylroie Lumber Company to foreclose a lien claimed by it for the lumber furnished and used in the construction of the building. The Commercial Sash and Door Company, J. W. Merriman, F. T. Crowe & Company, Edwin Strom and R. N. Smith intervened, likewise praying foreclosure of liens claimed by them. While the issues were being framed, the two Headricks and the United States Fidelity & Guaranty Company were made parties.

We will first consider the case of Ellis-Mylroie Lumber Company. The bonding company claims that this company's claim of lien should fail because, first, it

did not give the notice of intention to claim a lien as required by the statute; and second, that the claim of lien as filed did not meet the requirements of the lien statute. The notice of intention was addressed to Dr. J. Wilkins, Cobb Building, Seattle, Washington, and was dated July 11, 1919. Prior to this claim and on June 11, Dr. Wilkins and wife had conveyed the property to the St. Luke's Hospital. Rem. Code, § 1133 (P. C. § 9706), among other things, provides that every person furnishing materials to be used in the construction of a building shall, not later than five days after the date of the first delivery, deliver or mail to "the owner or reputed owner" of the property upon which such materials are to be used a notice in writing stating that such person has commenced to deliver the materials and that the lien may be claimed therefor. At the time the notice of intention was mailed to Dr. Wilkins, the title to the property was in St. Luke's Hospital. The point here is that the notice was not sent to the owner or reputed owner of the property, as required by the statute. St. Luke's Hospital was a corporation and Dr. Wilkins had the general management and had control of its affairs, and was also president. The notice was received by him through the mail. The building permit was taken out in his name, and the business address of the St. Luke's Hospital was at the office of Dr. Wilkins in the Cobb building. This evidence shows that, if the notice had been addressed to the St. Luke's Hospital, the owner, it would have been delivered to Dr. Wilkins at his office in the Cobb building, as president and manager of the hospital. In the case of *Brace & Hergert Mill Co. v. Burbank*, 87 Wash. 356, 151 Pac. 803, Ann. Cas. 1917E 739, a notice was mailed to the wrong street address of the owner of the property by one furnishing mater-

ial to be used in the construction of the building, and the correct address was placed upon the letter by the post office authorities and was received by the owner in due course. It was there said:

"We are clearly of the opinion that this was error not in the least prejudicial and not impairing respondent's lien right. The purpose of the address, of course, is to have the notice reach the owner, and when the address is sufficient to accomplish that purpose the court should not further inquire as to its sufficiency."

There can be no difference in principle between that case and the present. There the notice was sent to the wrong address and was corrected in the course of transmission and received by the owner. Here the notice was addressed to a person not the owner and was received by him as the representative of the owner. Had the notice been addressed to the owner, the only difference would be that it would have been received by Dr. Wilkins as president and manager of the corporation and not as an individual. We think the error in the notice was in no wise prejudicial and was not such as to impair the right of the claimant to a lien.

There is a further objection to the notice of intention to claim a lien in that it does not recite the name of the contractor or agent as required by the statute. The notice recites that the material was being furnished at the request of the King County Construction Company. Upon the trial, the Ellis-Mylroie Company asked leave to amend a notice by inserting in lieu of King County Construction Company the name of P. T. Bratt. No prejudice could result to the appellant by reason of such an amendment and it was a proper one to be made. *Olson v. Snake River Valley R. Co.,* 22 Wash. 139, 60 Pac. 156; *Cornelius v. Washington Steam Laundry,* 52 Wash. 272, 100 Pac. 727. The sta-

tutory rule requiring the provisions of the law relating to liens to be liberally construed applies to the notice of intention to claim the lien as well as to the notice of lien. *Ehrlick-Harrison Co. v. Cushman,* 86 Wash. 190, 149 Pac. 708.

The second point is that the claim of lien as filed did not comply with Rem. Code, § 1134 (P. C. § 9710), which, among other things, requires that a notice of claim of lien shall state the person to whom the material was furnished, the name of the owner or reputed owner of the property, if known. The notice of claim of lien filed in this case recited that the materials were furnished at the request of P. T. Bratt. It does not mention the other two contractors. The contract was signed by Phillip T. Bratt, J. R. Headrick and R. R. Headrick, as contractors. The lien claim recited that the owners or reputed owners of the property were John W. Wilkins and Alice Wilkins, his wife, and the St. Luke's Hospital. It will be observed that this notice of claim of lien not only gives the St. Luke's Hospital as owner, but also Dr. Wilkins and wife. The fact that it recited persons as owners who had no interest in the property, while also giving the name of the actual owner, cannot be considered a material defect in the claim of lien. *McHugh v. Slack,* 11 Wash. 370, 39 Pac. 674. It is true that the claim of lien recites that the material was furnished at the request of P. T. Bratt, and does not mention the other two parties to the contract. The evidence shows that, prior to this time, Bratt had been purchasing material from the Ellis-Mylroie Lumber Company under the name of the King County Construction Company, and the first few loads of material furnished under this contract were delivered to him as such. After these few loads had been delivered, he notified the materialman not to bill the

lumber to the King County Construction Company, but to himself. Bratt then informed Ellis-Mylroie Company that he was the contractor. The officers of the company had not seen the building contract and did not know that it was signed by parties other than Bratt until after the claim of lien in this case had been filed. The material for which the lien was claimed was delivered at the place where the hospital was being constructed, and was used in its construction.

The statute requires that the notice of claim, as near as may be, shall state the name of the person to whom the material was furnished. This is not an absolute requirement making the lien claimant at his peril know the names of all the parties who may have signed the building contract. Such a contract not being one which is made a matter of record, it is easy to conceive that in many instances it might be difficult for the materialmen to ascertain exactly the names of the persons signed thereto. Rem. Code, § 1147 (P. C. § 9722), provides that the provision of law relating to liens such as that here in question, and all proceedings thereunder, shall "be liberally construed with a view to effect their objects." It seems to us that it would be a harsh and technical rule which would require the materialman at his peril to know the names of all the contractors. The fact that the notice of lien did not recite the names of Headrick in no wise caused any prejudice.

The bonding company claims that the lien of the Commercial Sash and Door Company should be disallowed because, first, the notice of intention to claim the lien is not in the form prescribed by law; and second, because the claim of lien as filed for record was insufficient. The notice of intention to claim the lien was addressed "to Dr. John W. Wilkins, agent,

St. Luke's Hospital, 308 Cobb Building, City." He recited that the material was furnished at the request of "P. T. Bratt, contractor or agent." The objection to this notice of intention is that it is not addressed to the owner, but to Dr. Wilkins, as agent of the owner, and that the contractor is recited as P. T. Bratt, instead of Bratt, Headrick and Headrick. It is unnecessary to discuss again the sufficiency of the manner in which this notice is addressed. What has already been said in the case of the Ellis-Mylroie Lumber Company covers the matter. This notice, in addition to that recited in the other case, refers to Dr. Wilkins, as agent of St. Luke's Hospital, which was the owner. The objection to the lien notice was that it described the contractor as P. T. Bratt, and not as Bratt, Headrick and Headrick. This question is also covered by what has been said in the Ellis-Mylroie Lumber Company case.

The bonding company objects to the allowance of the claim of J. W. Merriman because, first, the notice of intention was insufficient; and second, because the lien notice was defective. The notice of intention was addressed to "J. W. Wilkins, care J. R. Nevins, Hoge Building, Seattle." J. R. Nevins was the architect for the building and testified that the notice was received and by him delivered to Dr. Wilkins, and Dr. Wilkins testified that he received it.

This case is covered by what is said in the Ellis-Mylroie Lumber Company case, *supra,* and for the reasons there stated, the notice was sufficient.

The objection to the lien notice appears to be that there was no evidence submitted to the court showing the terms of an alleged contract with one Berto, who was a subcontractor. The notice of claim of lien followed the requirement of the statute (Rem. 1915 Code, § 1134; P. C. § 9710), with the additional clause added

that Berto was a subcontractor. The architect testified to the fact that Berto was a subcontractor and that the materials furnished by the claimant were used in the building. The objection to the notice of lien appears to be without merit.

The next case to be considered is that of Edwin Strom, who was employed by P. T. Bratt, one of the contractors, to furnish what is called a sanding machine and a man to operate it, at the agreed price of $2.50 per hour. It is for this service that the lien is claimed in this case. The position of the appellant is that the contract was for $2.50 for the machine and $1.50 for the man to operate it, but we do not so understand the testimony. It may be that the testimony on this question is not as clear as it might be, but the only reasonable inference to be drawn from it is that the $2.50 was for the machine and the man to operate it. Whether it would make any difference in the result if the price for the machine and the amount to be paid the operator were segregated, it is not necessary here to determine.

The appellant cites a line of cases such as *Hall v. Cowen,* 51 Wash. 295, 98 Pac. 670, and *Gilbert Hunt Co. v. Parry,* 59 Wash. 646, 110 Pac. 541, Ann. Cas. 1912B 225, as well as cases from other jurisdictions, which hold that, where there is simply the leasing or rental of a tool or machine, and the one to whom it is leased or contracted furnishes the operator, no right of lien exists. But those cases do not control where an operator is furnished with the machine. The cases of *Potter Manufacturing Co. v. A. B. Meyer & Co.,* 171 Ind. 513, 86 N. E. 837, 131 Am. St. 267, and *Wood, Curtis & Co. v. El Dorado Lumber Co.,* 153 Cal. 230, 94 Pac. 877, 126 Am. St. 80, 16 L. R. A. (N. S.) 585, recognizes this distinction. While in each of these cases

the claim for lien was denied, it was in effect stated that, if the owner of the machine had furnished the operator of the machine, the claim for lien would have been sustained.

In *Chavelle v. Island Gun Club*, 77 Wash. 304, 137 Pac. 511, one Hall had a contract for the construction of a dike. In carrying out this contract the principal contractor entered into an agreement with the Everett Construction Company whereby that company was to do the work of dredging, furnishing its own dredger and the operating crew. After the work was completed, a lien was claimed by the construction company and sustained by the holding in that case. It is true that the construction company there was treated as a subcontractor, but the same reasoning which would sustain its right of recovery would sustain that of Strom here. The holding there is based upon the theory that it was the intention of the law makers to provide a lien for every person supplying materials going directly into a structure, or performing labor directly thereon. The lien was sustained on the theory that the operation of the dredge by the crew furnished by the owner thereof was labor which went into the dike, within the meaning of the statute. In this case the work done by the sanding machine and the operator was that of smoothing the floors in the building, and, of course, was labor performed directly upon it.

The case of F. T. Crowe & Company, is controlled by what has been hereinbefore said and does not require detailed discussion.

As above stated, from the judgment entered, the contractors prosecuted a cross-appeal. Upon their appeal they contend, first, that the claim of J. W. Merriman should not have been allowed; and second, that the amount of the judgment in favor of Ellis-Mylroie Lum-

ber Company was in too great an amount; and third, that there should have been allowed against the owner a greater sum for extras than was awarded them. As to the Merriman claim, no discussion is required because that matter is covered in what has been hereinbefore said in the appeal of the bonding company.

As to the Ellis-Mylroie Company, the contractors claim that the judgment in favor of that company is too high, in that it includes overcharges for material furnished and fails to give credit for materials returned, as well as damages for failure to deliver a proper grade of flooring. It will be unnecessary to discuss the evidence bearing upon these items in detail. The evidence offered in behalf of the Ellis-Mylroie Company tends to establish that, after the material had been furnished, there was a meeting between a representative of that company and one of the contractors, wherein the whole matter was discussed and the settlement made. It is true that the evidence upon this question is conflicting, but after giving attentive consideration to the record, we are of the opinion that the conclusion of the trial court was right and should be sustained.

As to the claim for extras against the St. Luke's Hospital, the contractors contend, as already stated, that the judgment was not in sufficient amount. The extras may be divided into two classes: One, those which were put in upon written orders, and as to this class it is claimed by the contractors that they were entitled to ten per cent upon the cost price; and the other class was extras which they claim had been put in, but without any written order, and they seek to recover upon the theory that the provision in the specification relative to a written order had been waived. The specification referred to provides that nothing in

the nature of extra work shall be done except upon the written order of the architect, countersigned by the owner, and in all cases where extra work is ordered, the cost shall be agreed upon and included in the order. There is a further provision that if, by reason of any emergency, it is necessary to proceed at once with the work, then the contractor shall render the architect an itemized account of the labor and materials expended, immediately after the completion of the work, showing the exact cost, upon which a profit of ten per cent would be allowed. Under this contract, where extras were put in under a written order and the cost thereof agreed upon, there was no allowance of the ten per cent. The extras which were allowed came within this class, and the trial court was right in disallowing the ten per cent. As to the other extras, whether the provision of the contract had been waived, the evidence is conflicting, the evidence in support of the contractors being to the effect that there was a waiver, and the evidence offered on behalf of the owner being to the opposite effect.

The record makes it plain that, as to this class of extras, there was no written order given, and they were not put in as emergency work. The only theory upon which the contractors would be able to recover would be that of a waiver. The trial court expressly found that the provisions of the building contract requiring "written order of the architect were not waived."

The evidence sustains this finding.

The judgment will be affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.