## Toll-Barkan Company *v.* Toll et al., Appellants.

Argued June 16, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*Cassin W. Craig*, with him *Wisler, Pearlstine, Talone & Gerber*, for appellants.

*Russell J. Brownback*, with him *Roger B. Reynolds*, for appellee.

OPINION BY MONTGOMERY, J., September 16, 1960:

These appeals are from separate judgments entered in twelve scire facias sur mechanic's lien proceedings tried together before Hon. E. ARNOLD FORREST, J., without a jury.

(1) The principal dispute centers around payments totalling $10,000 not credited upon the lien claims but applied by claimant-appellee on a claim for a bonus allegedly due on work performed by claimant for Whitemarsh Downs, Inc., one of defendant-appellants, on jobs other than those for which the liens were filed.

For a number of years commencing in 1948 claimant was employed by Whitemarsh Downs, Inc. to supervise the construction of homes being built by it. Three

groups of homes were constructed between 1948 and the end of 1950, and claimant has been paid in full for its services in connection with all of them.

A fourth group of 73 houses was commenced in January, 1951, under similar arrangements. Claimant claims the agreed compensation on this job was $500 per house with an additional bonus of $10,000 if all the houses were completed in one year, specifically by January 15, 1952. Whitemarsh Downs, Inc. insists that the compensation agreed to was $500 per house without any bonus. The houses were completed within the one-year period.

The houses for which the liens were filed were commenced after July 1, 1952. The lien claims on them total $15,000. Whitemarsh Downs, Inc. admits that services totaling $10,000 were rendered but alleges payment by the aforesaid $10,000.

The trial judge found as a fact that plaintiff and Whitemarsh Downs, Inc. did agree on the bonus for the fourth group of houses and our examination of the testimony discloses sufficient evidence to support his finding. A restatement of that evidence in this opinion is unnecessary since it is referred to in detail in the adjudication and opinion of the lower court. The credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn therefrom were for the trial judge; and since claimant received the decisions, this Court is bound to consider that testimony in a light most advantageous to it, to resolve all doubts and conflicts therein in its favor, and, if the findings of the lower court are supported by competent evidence, to accept them. *Jemison v. Pfeifer*, 397 Pa. 81, 152 A. 2d 697; *Lugin v. Dobson*, 376 Pa. 620, 104 A. 2d 95; *Bell Appeal*, 396 Pa. 592, 152 A. 2d 731. The evidence supports the findings of the lower court.

The payments constituting the $10,000 under discussion were in the form of a series of checks which did not specify to which claims they were to be applied. They were delivered subsequent to July 1, 1952, the date on which the work was started on the first houses against which the liens were filed.

The law on this subject is stated in *Woods Trust*, 350 Pa. 290, 294, 38 A. 2d 28, 30, quoting from *Page v. Wilson*, 150 Pa. Superior Ct. 427, 433, 28 A. 2d 706, 709: " 'The debtor has a right to make the application, in the first instance, and failing to exercise it, the same right devolves on the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles, and primarily, it deems the payments to have been made in discharge of the earliest liabilities of a running account—each item of credit is applied in extinguishment of the earliest debit items in the account; in other cases, it will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the debt least secured, unless to the prejudice of a surety.' "

The evidence in this case indicates that plaintiff appropriated the payments to the bonus claim when and as received. The record indicates further that no dispute arose between the parties concerning this claim until claimant submitted a bill or statement of account as of the end of 1953, which indicated that at that time $9,000 was owing on six houses at Church Road and Station Avenue. Albert Toll, representing the defendant, Whitemarsh Downs, Inc., took exception to this item when the statement was delivered and asserted that it had been paid. He testified that this was the first time that he knew of any claim for a bonus being asserted by claimant. The judge's finding that the original contract provided for the bonus is contrary to his contention.

Defendants cite, *Page v. Wilson,* supra, Restatement, Contracts, §389, comment b, and *Standard Surety & Casualty Company of New York v. United States,* 154 F. 2d 335, as authority for the proposition that a creditor may not apply payments to a disputed or contested claim and thus bar a debtor of his right to litigate the claim; and for the further proposition that a court should not appropriate money to a disputed or contested claim and thus favor one litigant over the other. The reason for the rule, as stated in the *Standard Surety* case, supra, is (p. 337), ". . . that it would be inequitable by such conduct to permit one of the parties to gain an undue advantage in their controversy." However, the reason for the rule would seem to cease when a determination has been made of the contested claim, as has been done in this case. The defendants have had full opportunity to litigate the claim for the bonus and Judge FORREST has found that it was a valid and legal claim. After determining the validity of the claim, it would be within the discretion of the court to make the appropriation in a way· beneficial to the creditor, in such a way as he would have been permitted to make it had the claim not been contested. In the *Standard Surety* case, supra, an appropriation to two claims (Gulfport and Camp Bainbridge projects) was disapproved because they remained in dispute; but an appropriation to the other two claims (Frederick and Altus projects), which had been settled by other litigation, was recommended, with directions to the lower court to carry out the recommendation.

We deem it unnecessary to say whether the question of bonus in the present case was such a disputed claim as intended by the foregoing rule, and conclude that after the trial judge found the bonus claim to be valid, the appropriation of the $10,000 to it was proper whether made by the court or as having been made previously by the claimant.

(2) The next question to be considered is limited to appeals Nos. 155, 156, 157, and 158 (154, 155, 156, 157 June Term, 1954, of the court below) in which Sylvia S. Toll is named as owner or reputed owner with subsequent purchasers of the properties named as present owners.

The record establishes that Mrs. Toll owned the properties covered by these liens from 1945 to September 24, 1951, when she conveyed them to Whitemarsh Downs, Inc. It also establishes beyond question that no visible work was done toward construction of the buildings thereon until after that date.

The testimony of the claimant is to the effect that he arranged to provide the services of a farmer to mow the tall grass and weeds and that the farmer took his mowing machine to the premises on September 21 but because of rain for several days he did nothing and took it away again; and thereafter, a bulldozer had to be brought in to do the work. There is no evidence as to when it did any work. Exhibit 31 shows further that nothing visible had been done before September 26.

The trial judge has also found on sufficient and competent evidence that the contracts upon which the liens are predicated were between claimant and Whitemarsh Downs, Inc., and not with Mrs. Toll.

It thus appears that the liens fail to name the proper owner at the time the right of lien arose or the proper party who made the contract with claimant. Whitemarsh Downs, Inc. is not named in the liens in any place or manner although it was the owner at the time the work was started and the party with whom claimant contracted.

The Act of June 4, 1901, P. L. 431, §11, as amended (49 P.S. §53), requires the lien to name the owner or reputed owner of the building, and also the contractor, architect, or builder.

Under the practice followed prior to the Act of 1901, it would have been sufficient had Whitemarsh Downs, Inc. been named without naming the present owner. In *Fourth Avenue Baptist Church v. Schreiner*, 88 Pa. 124, it was held that a mechanic may file his lien against the person who holds the legal title when the work was commenced, and he is not bound to inquire further or take notice of any subsequent conveyance of the property. At page 126, the Court said, "Doubtless he might have named the party owning the ground at the time of filing, but he was not bound to do so."

Since the Act of 1901, *Brown v. Engle*, 75 Pa. Superior Ct. 592, is authority for naming only the present owner.

Although it has been held that it is not necessary to name a contractor when there is none other than the owner, *Herbert v. Patterson*, 13 W. N. C. 126 (1883); *Knabb's Appeal*, 10 Pa. 186 (1849); *Sullivan v. Johns*, 5 Wh. 365 (1840), a claim is defective if the name of an existing contractor is omitted. *Hamilton v. Means*, 155 Pa. Superior Ct. 245, 38 A. 2d 528. This last case also holds a lien to be invalid, although it names a contracting party, if it fails to identify him as one coming within the definition of contractor as expressed in the Act.

Since the contracting party in the present case is not named as contractor or as owner, we are led to the inescapable conclusion that these liens under consideration do not fulfill the requirements of the statute and are therefore defective.

Although amendments are allowed with liberality, *May v. Mora*, 50 Pa. Superior Ct. 359, an amendment is not allowable, after the time for filing a lien has expired, to substitute an entirely different person as contractor. Act of 1901, June 4, P. L. 431, §51 (49 P.S. 243). A person already named may have his iden-

tity changed from owner to contractor, *Hamilton v. Means,* supra, or from contractor to owner, *Jacob A. Bohem & Brothers, Inc. v. Seel,* 185 Pa. 382, 39 A. 1009, but such is not the present case. Mrs. Toll was named as the contracting party, acting through her husband, Albert Toll, as her agent. This agency was denied and the court found that he was the agent of Whitemarsh Downs, Inc., and not of Mrs. Toll. There is no merit in claimant's argument that Mrs. Toll was obligated to repudiate any contracts with claimant. It was in no way misled by her actions and she was not a party to any of the contracts.

(3) In reference to appeals Nos. 159, 160, 164, 165 (sur. 158, 159, 163, 164 June Term, 1954, of the court below), we find no error in the judge's conclusion that eighty percent of the services which claimant had agreed to provide had been rendered when the work was stopped. The houses were erected and under roof, the interiors were "roughed in" for plumbing and electricity, plastering had been started, and the sub-floors had been laid. All that remained was the completion of the plastering and the finishing details such as installation of plumbing, electrical, and kitchen fixtures, trim around windows and doors, hardware, the laying of the hardwood floors, painting, decorating and lawn work; and the contracts and arrangements for these sub-contracts had been made by claimant before the work was stopped. When the remaining service to oversee the work of the subcontractors who were to do this, is compared with the service previously rendered to let contracts, locate the house, construct the foundation, and raise the house to the point it had reached when the work was stopped, the conclusion that 80 percent of the supervisory service had been performed appears reasonable and will not be disturbed.

(4) The remaining question concerns three liens for work done to supervise the construction of four sub-foundations on lots intended to be used for houses. These liens are Nos. 160, 161, 162 June Term, 1954 (appeals 161, 162, and 163). The dispute is whether this work was incidental to the work done on another home known as the Regency House or separate and apart therefrom. There is ample evidence in the testimony of Abe Toll (R. 165a-167a) that it was performed under a separate contract. There is also evidence that $200 was a fair and reasonable charge for same, since no stipulated amount had been agreed on. The chancellor has accepted that testimony as credible and we are bound by his finding since it is supported by the evidence.

Appeals Nos. 159, 160, 161, 162, 163, 164, 165, and 166 are dismissed and the judgments from which they were taken are affirmed; and appeals Nos. 155, 156, 157, and 158 are sustained, the judgments from which they were taken are reversed, and entered for the defendants therein.