MARATHON METALLIC BUILDING COMPANY, Appellant,

v.

The TEXAS NATIONAL BANK OF WACO, Appellee.

No. 5494.

Court of Civil Appeals of Texas, Waco.

March 11, 1976.

Moody & Crow, Frank M. Fitzpatrick, Jr., Waco, for appellant.

Naman, Howell, Smith & Chase, Paul H. Hubbard, Waco, for appellee.

OPINION

JAMES, Justice.

This case involves the validity of a materialman's lien claimed by Appellant, Mara-

thon Metallic Building Company. The trial court held the claimed materialman's lien to be invalid. We hold the lien to be valid and reverse and render a portion of the trial court's judgment and affirm the balance thereof.

This case began on October 1, 1974, with an application for writ of garnishment by Appellee, The Texas National Bank of Waco, as garnishor, against O'Grady Containers, Inc., William D. O'Grady, and George W. Moore, as garnishees. Prior to the institution of the garnishment suit, Appellee Texas National had on September 13, 1974, obtained a judgment in a District Court of McLennan County, Texas, against R. J. Welch Construction Company and others in the amount of $59,154.83 and attorneys' fees plus some additional amounts against particular defendants, the details of which are not material to the case at bar.

Based upon said judgment, as stated, Texas National filed the application for writ of garnishment against O'Grady Containers, Inc., William D. O'Grady and George W. Moore as garnishees. The garnishees answered to the effect that they owed R. J. Welch Construction Co. the sum of $3860.00, which amount represented a 10% retainage of the contract price of some improvements that had been made by R. J. Welch Construction Co. upon premises upon which the O'Grady Container's, Inc., plant was located, but which property the undisputed proof showed was owned by William D. O'Grady and George W. Moore individually.

Garnishees thereafter filed a Bill of Interpleader wherein they paid the $3860.00 funds in question into the registry of the trial court and impleaded and brought into the suit R. J. Welch Construction Co., R. J. Welch, Sr., R. J. Welch, Jr., Marathon Metallic Building Co., Inc. (Appellant herein), Allen Glass Co., Crawford Door Sales, Owens-Corning Fiber Glass Corp., and Centex Manufacturing Co. All of these above-named parties so brought into the suit by the Bill of Interpleader were disposed of by the trial court's judgment, and none are of

concern to this appeal except Appellant Marathon Metallic Building Co., Inc., and Centex Manufacturing Co.

Appellant Marathon was a material supplier on the construction project at the premises owned by garnishees Messrs. O'Grady and Moore, and in such capacity had made claim for a materialmen's lien against garnishees because of non-payment of the account (in the asserted amount of $20,583.89) owed to Appellant Marathon by R. J. Welch Construction Co. As a result of said claim, Appellant Marthon was named in the Bill of Interpleader as a Defendant, was brought into the suit, and thereupon filed its answer to said Bill of Interpleader and its cross-action alleging its priority claim to the impleaded funds because of its asserted properly perfected Mechanic's and Materialmen's Lien under the provisions of the Hardeman Act, same being Articles 5452 et seq., Vernon's Texas Civil Statutes. Marathon sought judgment for recovery of the amount owed it by R. J. Welch Construction Co. to the extent that it could be satisfied from the impleaded funds, and for foreclosure of its lien. Likewise Centex Manufacturing Co. sought similar relief for $220.50 allegedly owed it by R. J. Welch Construction Co. for materials supplied to this same job, and for foreclosure of its asserted lien.

Trial was had to the court without a jury, pursuant to which the trial court's judgment made the following disposition of the $3860.00 impleaded funds on hand: (1) The court costs were ordered paid; then (2) attorney's fees in the amount of $750.00 were awarded to Interpleaders O'Grady Containers, Inc., O'Grady and Moore; (3) $220.50 was awarded to Centex Manufacturing Co. in payment of its claim and in satisfaction of its lien, and (4) the balance of such funds was awarded to Appellee Texas National Bank of Waco. That is to say, Texas National was awarded the $3860.00 less $970.50 and costs of court. The trial court further adjudged that Appellant's Marathon's asserted materialman's

lien was invalid and that Appellant take nothing, from which judgment Marathon appeals. We reverse and render judgment in favor of Appellant Marthon for the funds which were awarded to Appellee Texas National in the trial court's judgment, and hold that Appellee take nothing.

Appellant Marathon asserts that the trial court's finding that Appellant's material-man's lien was invalid is error because (1) such finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust; and (2) for the further reason that Appellant had substantially complied with the statutory prerequisites for the perfecting of such materialman's lien, under the provisions of Article 5452 et seq., Vernon's Texas Civil Statutes. We sustain these contentions.

Appellant Marathon is the asserted holder of a materialman's lien as a supplier to R. J. Welch Construction Co., and Appellee Texas National is a garnishment judgment creditor of R. J. Welch Construction Co. The controversy is between these two parties, and the solution thereof depends upon whether Marathon's asserted lien is valid. If Marathon's lien is valid, then the trial court's judgment must be reversed and rendered, to the extent necessary to permit Marathon to recover the amount heretofore awarded to Texas National. If on the other hand Marathon's lien is invalid, then the trial court's judgment must be affirmed, because in such event Appellee Texas National would be entitled to the recovery awarded to Appellee by the trial court's judgment.

In order to determine the validity of Marathon's lien we are obliged to construe the language of a portion of Article 5455, V.A.T.S., insofar as it applies to the facts of our case, which language is as follows:

"Art. 5455. *Form of claim.*

"An affidavit claiming a lien filed for record by any one claiming the benefit of this Act shall be signed by the claimant or by some person on his behalf and shall contain in substance the following:

.    .    .    .    .

"b. *The name of the owner or reputed owner, if known.*" (emphasis supplied).

In the case at bar, Marathon, a Houston-based firm, furnished materials to R. J. Welch Construction Co., a corporation head-quartered at Waco, Texas, for the construction of a building located in Waco, which Welch had contracted to build. The contract for the construction of such building was dated February 25, 1974, and the parties signing same were R. J. Welch Construction Co. (signed by R. J. Welch, Jr.), W. G. (Don) Ballew, shown as general contractor, and O'Grady Containers, Inc. (signed by George W. Moore).

R. J. Welch Construction Co. sent a purchase order dated March 1, 1974, to Marathon wherein Welch ordered materials for the job in question; which showed: "Builder's customer: O'Grady Containers, 200 La Salle St., Waco, Texas."

After Marathon had furnished materials for this job in the amount of $20,583.89, and by August 1974 the account had become delinquent, Dennis McCarty, Assistant Regional Manager for Marathon, made a personal trip to Waco on or about August 20, 1974, to investigate the cause of Welch's nonpayment of the account. He went out to 200 La Salle Street in Waco, Texas, and there found the manufacturing plant of O'Grady Containers, Inc., which was a plant manufacturing corrugated containers. He recognized Marathon's materials in the newly constructed building which had the sign "O'Grady Containers, Inc." displayed upon it. He talked to a receptionist but was unable to contact any officials of the company at the time because none were present. He later talked to R. J. Welch, Jr., an officer of R. J. Welch Construction Co., and to W. G. "Don" Ballew, the man whose name was signed to the above-described Welch-O'Grady Containers contract as "General Contractor". (In this connection, although Mr. Ballew was signed as "general

contractor", in truth and in fact he was hired by William D. O'Grady and George W. Moore to secure people and firms to do parts of the construction job in question and to supervise the overall job, and additionally to construct an office inside the building). Don Ballew told McCarty that R. J. Welch Construction Co. had been paid all but about $4000.00 of their contract price to construct the building. Learning these things, Dennis McCarty returned to Houston and caused an attorney, a Mr. Phil Smith, to prepare (in several copies) the "Affidavit of Materialman's Lien" as well as a letter addressed to "O'Grady Containers, Inc.", as owner of the property, which letter was labelled, "Notice of Claim of Materialman's Lien", and a letter addressed to R. J. Welch Construction Co. labelled, "Notice of Claim of Materialman's Lien."

The Affidavit of Materialman's Lien was shown to be for the purpose of fixing a lien pursuant to Article 5452 et seq., V.A.T.S. "upon the real estate hereinafter described" for the $20,583.89 worth of materials furnished by Marathon to R. J. Welch Construction Co. The affidavit recited that "O'Grady Containers, Inc., is the owner or reputed owner of the land described herein and the improvements constructed thereon." Attorney Smith prepared all the papers in Houston except the property description, based upon the information furnished him by Dennis McCarty. Lawyer Smith secured the services of Honorable Ron Moody, a Waco, Texas, lawyer to secure the property description for the lien papers. Mr. Moody first went to the McLennan County Tax Assessor-Collector's office and located the property on the tax maps of the City of Waco, then went out and inspected the property on the ground, and then went back to the tax office and copied the legal description from the tax office records. He secured a card from the county tax office which contained the property description of the property in question, which card showed the owner of the property to be "O'Grady Containers, Inc.", which card had "1972" typewritten on it. Attor-

ney Smith mailed the copies of the affidavit and notice letters to Attorney Moody, all of which Moody received in his office on September 13, 1974. Moody attached the property descriptions in the proper places, and then mailed by certified mail (return receipt requested) copies of the affidavit and notice letters respectively to "O'Grady Containers, Inc." as property owner, and to R. J. Welch Construction Co. A few days later Moody got a return receipt card back from "O'Grady Containers, Inc." signed by George W. Moore. Likewise Moody got back a return receipt card from R. J. Welch Construction Co. Also on September 13, 1974, Moody filed the Affidavit of Materialman's Lien for record in the County Clerk's office of McLennan County.

The property in question was owned by O'Grady Containers, Inc. prior to August 17, 1972; however, on said last-named date O'Grady Containers, Inc., conveyed the property by warranty deed to William D. O'Grady and George W. Moore individually, which was filed for record on August 21, 1972, in the Deed Records of McLennan County, Texas. The title to the property stood in the names of William D. O'Grady and George W. Moore (individually) at all times material to this case. William D. O'Grady was president and a stockholder of O'Grady Containers, Inc., and lived in Tarrant County. George W. Moore was vice president and a stockholder of said corporation as well as general manager of the O'Grady Containers, Inc., Waco plant, and had been so employed for some 13 to 14 years.

The specific question before us, then, is whether or not under this record, Marathon substantially complied with the above-quoted portion of Article 5455 in naming in their Affidavit of Lien and notices, O'Grady Containers, Inc., as "owner or reputed owner" of the property, when in truth and in fact the property was owned by William D. O'Grady and George W. Moore. We are of the opinion and hold that Marathon did substantially comply with the Mechanic's and Materialman's Law in this regard and

that Marathon's Materialman's Lien is valid.

We have been cited to no Texas case dealing with this specific problem, and we have found none. Out-of-state cases are not harmonious which deal with this problem of naming the owner or reputed owner of property against which a mechanic's and materialman's lien is sought. Appellant Marathon cites in support of its position *Campbell v. Graham* (1960) 144 Colo. 532, 357 P.2d 366, *Ellis-Mylroie Lumber Co. v. St. Luke's Hospital* (1922) 119 Wash. 142, 205 P. 398, *Corbett v. Chambers* (1895) 109 Cal. 178, 41 P. 873. Appellee Texas National cites in support of its position *Toll-Barkan Co. v. Toll* (1960) 193 Pa.Super. 221, 164 A.2d 36, *Fowler v. Roxboro Homes Inc.* (1959) 98 Ga.App. 829, 107 S.E.2d 285, *Hartford Acc. & Indemnity Co. v. A. B. C. Cleaning Contractors* (1965) 121 U.S.App. D.C. 300, 350 F.2d 430, and *Chamberlin Metal Weather Strip Co. v. Karrick* (1931) 60 App.D.C. 316, 53 F.2d 928. Of course these out-of-state holdings must be viewed in the light of differently-worded statutory requirements.

■ It is well settled in Texas that the mechanic's and materialman's statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen. *First National Bank in Dallas v. Whirlpool Corp.* (Tex.1974) 517 S.W.2d 262, *Hayek v. Western Steel Co.* (Tex.1972) 478 S.W.2d 786, *Strang v. Pray* (1896) 89 Tex. 525, 35 S.W. 1054. Our Supreme Court in *Hayek* further held that in the event of ambiguity in the Mechanic's and Materialman's law, "the proper rule of construction would require that it be resolved in favor of the *primary object* of the statute, which is to afford security and protection to laborers and materialmen. It is a rule of long standing that the mechanic's and materialman's lien statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen. (cites cases).

"One reason for the lien statutes and the liberal rule of construction is that labor and materials lose all further value to the laborer and materialman once they are furnished and put into the house or building, but they usually enhance the value of the property to the benefit of the owner and those who take under him." (emphasis supplied)

Moreover, Texas is not a jurisdiction which applies a "strict compliance" rule before a lien exists, but rather follows a "substantial compliance" rule. *Texcalco, Inc. v. McMillan* (Eastland, Tex.Civ.App.1975) 524 S.W.2d 405, no writ. As stated in *Whiteselle v. Texas Loan Agency* (Tex.Civ.App. 1894) 27 S.W. 309, writ refused:

"No material departure from the requirements of the statute can be indulged, without fatal results to the lien; but a substantial compliance with the terms of the statute is all that is necessary to put the lien in operation, and give it full force and validity. *Pool v. Wedemeyer,* 56 Tex. 287."

In harmony with the substantial compliance doctrine is the rule stated in 48 ALR(3d) at page 214 under the general heading, "Mechanic's Lien-Designation of Owner":

"(b) Where statute provides for naming reputed owner.

"A statute providing that the claimant shall give the name of the owner or reputed owner, if known, implies that if the claimant in good faith gives the name of a reputed owner, he shall not lose his lien if he shall afterward ascertain that some other person is the owner. He is not required to ascertain at his peril the name of the true owner, and it is sufficient if he gives the name of the reputed owner."

■ Under the record before us, we hold that Appellant Marathon substantially complied with Article 5455 in naming O'Grady Containers, Inc. as "owner or reputed owner" of the property in question in their Affidavit of Lien and in furnishing notice of lien by certified mail to O'Grady Containers, Inc. as owner or reputed owner. This being so, it necessarily follows that

Marathon's lien is a valid lien, and has preference over the garnishment claim of Appellee Texas National Bank as judgment creditor of R. J. Welch Construction Co.

Accordingly, we reverse and render that portion of the trial court's judgment wherein Appellee Texas National Bank of Waco was awarded the $3860.00 impleaded funds less $970.50 and costs of the trial court, and hold that Appellee Texas National Bank take nothing. We further hold that Appellant Marathon is entitled to judgment for $3860.00 less $970.50 and costs of the trial court. No complaint is made of the trial court's award to Centex. Costs of this appeal is taxed against Appellee Texas National Bank of Waco. In all other respects the trial court's judgment is affirmed.

AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.

HALL, Justice (concurring).

The effect of this garnishment proceeding was to subrogate the garnishor Bank, the appellee here, to the rights of its debtor, Welch Construction, who, in turn, was the creditor of the garnishees, Moore and O'Grady. 26 Tex.Jur.2d 663, Garnishment, § 1. Moore and O'Grady properly impleaded Marathon Metallic, the appellant here, a claimant to the garnished funds, in order to protect themselves against double liability. *Thompson v. Fulton Bag & Cotton Mills,* 155 Tex. 365, 286 S.W.2d 411, 414 (1956). As between these contesting parties, I agree with the majority that Marathon Metallics substantially complied with the mechanic and materialmen's lien statutes and thereby trapped the amount of the funds it claims in the garnishees' hands before the Bank's writ of garnishment was served.

The material facts are without dispute. At all relevant times, Moore and O'Grady owned the land in question. They purchased the property on August 17, 1972 from O'Grady Containers, Inc. Moore is vice-president and a stockholder of O'Grady Containers, Inc., and is also general manager of its Waco plant. O'Grady is president and a stockholder of the company. He lives in Fort Worth. O'Grady Containers, Inc. is their tenant. On February 25, 1974, a written contract in the name of O'Grady Containers, Inc., was made with Welch Construction for improvements to the land for the total price of $38,602.00. The contract was signed and "approved" by Moore. Marathon was Welch's major materialman for the job, and supplied materials totaling $20,583.89 in price. Moore and O'Grady paid all draws on the contract by Welch. Complying with Article 5469, Vernon's Ann. Tex.Civ.St., Moore and O'Grady withheld $3,860.00, being 10% of the contract price, from Welch Construction. These are the funds in issue. Seeking to comply with Articles 5452 et seq., and to thereby secure its lien as a materialman, Marathon treated O'Grady Containers, Inc., as the owner or reputed owner. The affidavit Marathon filed to comply with Article 5455, which calls for the name of "the owner or reputed owner, if known," listed O'Grady Containers, Inc., as the owner or reputed owner; and the notices to the owner called for in para. 2b(1) of Article 5453 were sent by it to O'Grady Containers, Inc.

It is settled that a mechanic or materialman must substantially comply with the statutes in question in order to perfect the lien provided. But he need not literally comply. "Substantial compliance" therewith has been met if the object sought thereby—the protection of a right or the conferring of a benefit—has been as fully attained as though there had been literal compliance. "This compliance is especially sufficient where no one has been misled to his prejudice." *Hunt Developers, Inc. v. Western Steel Company* (Tex.Civ.App.—Corpus Christi, 1966, no writ hist.) 409 S.W.2d 443, 449. Whether or not there has been substantial compliance must necessarily turn on a consideration of all the facts and circumstances of the particular case; and no hard and fast rules can be laid down for a resolution of the question. Accordingly, I am convinced the question is one of law for the court, and not one of fact as alterna-

tively determined and found by the majority.

Here, Moore and O'Grady withheld funds from Welch under Article 5469. Within the context of our facts, this was done to protect Moore and O'Grady, the owners; Welch Construction, the original contractor; and Marathon, and the other subcontractors. Although Marathon listed O'Grady Containers, Inc., as the owner or reputed owner of the property in its affidavit and mailed the required notices to the corporation, the record shows that Moore and O'Grady received notice of Marathon's claim, knew what it was for, and knew it was against their property; that Welch Construction knew full-well the validity of the claim; and that no one for whose benefit the statutes were enacted has been surprised or misled or harmed, whether or not Marathon's attempt at compliance be less than literal compliance with some, all, or none of the relevant statutes. I am convinced there was sufficient compliance under the circumstances to perfect an enforceable materialman's lien in favor of Marathon against Moore and O'Grady. This is especially so in the light of the rule that the primary object of these statutes is to secure and protect laborers and materialmen. See, *First National Bank In Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex.Sup., 1974). Unlike the majority, I do not believe this question rests in this particular case on whether O'Grady Containers, Inc., was *in fact* a reputed owner of the property.

The appellant asserts that the failure of Marathon to attempt any compliance with Article 5454 was fatal to its lien. By its express terms, Article 5454 is applicable only when the owner withholds funds pursuant to the provisions of Article 5463. In our case, Moore and O'Grady retained funds under the authority of Article 5469. Article 5454 has no application.

For these reasons, I concur in the modification of the judgment set forth in the majority opinion.