Michael J. LaJINESS, Larry LaBell, William West, Jay Jondro, George Kraus, Joseph G. Conners, as Trustees of the Monroe Plumbers and Pipefitters Local No. 671 Retirement Plan, and as Trustees of the Monroe Plumbers and Pipefitters Local No. 671 Health and Welfare Plan, and United Association of Plumbers and Pipefitters Local No. 671 (AFL–CIO), Plaintiffs,

v.

REACTOR CONTROLS, INC., d/b/a RCI–Northeast Services Division, Defendant.

Civ. A. No. 84CV–7308–AA.

United States District Court, E.D. Michigan, S.D.

Aug. 12, 1985.

Joseph C. Marshall, III, Dickinson, Wright Moon Van Dusen & Freeman, Detroit, Mich., for plaintiffs.

Gregory S. Muzingo, Butzel Long Gust Klein & Van Zile, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case concerns the extent of the liability of an employer who failed to contribute to union benefit funds at the proper rate. Plaintiffs are the trustees of two union funds: the United Association of Plumbers and Pipefitters Local No. 671 ("Local 671") Retirement Plan and Trust, and the Local 671 Health and Welfare Plan and Trust. The defendant is Reactor Controls, Inc. ("RCI"), which built reactors at the Fermi 2 Nuclear Power Plant in Monroe from January, 1978, to March, 1983. The suit is based on § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1982), and § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 (1982).

Before beginning its work at Fermi 2, RCI entered into a series of collective bargaining agreements with the International Union, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("international union"). RCI's contracts with the international union incorporated by reference the terms of contracts between Local 671 and the Monroe County Master Plumbers, Heating, and Piping Contractors Association ("Monroe contractors"). The contracts between Local 671 and the Monroe contractors required employers to contribute to the union benefit funds at a higher rate for overtime hours worked by union members than for regular or straight time hours. Defendant claims

that it never received a copy of the terms of the contracts between Local 671 and the Monroe contractors, and thus did not know about the higher rate for overtime hours. RCI therefore contributed to the union funds at the same rate for all hours worked, whether regular or overtime.

RCI began reporting overtime hours worked by its union employees after approximately a year and a half on the job at Fermi 2, in September of 1979. Defendant thereafter consistently reported overtime, doing so in late 1979, 1980, 1981, and 1982. The plaintiff trustees did not immediately discover the error in defendant's overtime contributions on the monthly reports. The trustees requested an audit of RCI's payroll records in early 1983, however, and the auditors found the error. RCI then agreed to pay the funds the additional compensation owed for the overtime hours. On April 17, 1984, RCI paid the retirement fund $113,799.84, and paid the health and welfare fund $76,675.64.

The plaintiff trustees were not satisfied with this, and demanded that defendant pay additional amounts to the funds. These amounts include $49,810.27, which is 18% annual interest on the contribution shortfall; $6,104.35, which the audit allegedly indicated was still owing to Local 671; $8,878.05, which represents liquidated damages; and $6,952.84, which is the cost of the audit. RCI has refused the trustees' demand for these additional payments, arguing that it has completely satisfied its debt to the funds.

The plaintiff trustees filed suit in this court on July 9, 1984 to recover the amounts allegedly owing to the funds. On March 29, 1985, plaintiffs served defendant with a request for admissions. Defendant inadvertently failed to respond to the request within the thirty-day period provided by Fed.R.Civ.P. 36(a). Plaintiffs then filed a motion for summary judgment. The motion points out that Rule 36(a) provides that defendant's failure to respond constitutes an admission of all of the statements on plaintiffs' request. The motion then argues that defendant's admissions entitle plaintiffs to summary judgment.

The request for admissions contains sixteen statements, fourteen of which are not in dispute. The first four statements ask defendant if it was contractually bound to make the contributions in question to the plaintiff funds during the relevant time periods. Statement five asks defendant to admit that it employed members of Local 671. Statements six and seven request admissions that the 1983 audit revealed RCI's failure to comply with its contractual obligation to submit certain reports and payments to the union funds for overtime hours. Statements eight through fourteen ask defendant to admit that it paid the funds $113,799.84 and $76,675.64, that it refused to pay the amounts disputed in this case, and that the plaintiffs have demanded payment of the disputed amounts. RCI adheres to its admissions to the above fourteen statements.

RCI disputes the last two statements contained in plaintiffs' request for admissions, however. It now moves to withdraw its admissions to statements fifteen and sixteen, and it submits proposed answers to these statements. RCI's motion for partial withdrawal of admissions and plaintiffs' motion for summary judgment are discussed below.

## I. *Motion for Partial Withdrawal of Admissions*

■ RCI moves to withdraw its admissions to the two statements below, and substitute the following responses:

REQUEST FOR ADMISSION NO. 15: Because Defendant has failed to make timely and complete contributions in accordance with the terms and conditions of the collective bargaining agreements attached as Exhibits A through D of the Complaint, it is in violation of Section 515 of ERISA, 29 U.S.C. § 1145.

RESPONSE: Defendant denies that its failure to pay the amounts specified in Requests for Admissions Nos. 10 through 14, hereinabove, is a violation of Section 515 of ERISA, 29 U.S.C. § 1145,

for the reasons that plaintiffs are precluded from recovering said amounts by virtue of their undue delay in asserting their rights to payment of said amounts, thereby greatly prejudicing Defendant, and that the Plaintiffs are barred from recovery of the amounts in controversy under well settled equity principles of estoppel and/or laches, as stated in Defendant's Affirmative Defenses filed with its Answer to the Complaint.

REQUEST FOR ADMISSION NO. 16: Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) Defendant is required to pay Plaintiff's reasonable attorneys' fees and costs of suit.

RESPONSE: Defendant denies that it is required to pay Plaintiffs' attorneys' fees pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g), inasmuch as Plaintiffs are barred from asserting the underlying claim of a violation of 29 U.S.C. § 1145, for the reasons stated in response to Request for Admission No. 15, hereinabove.

See Defendant's Responses to Plaintiffs' Requests for Admission (filed with Defendant's Motion for Partial Withdrawal of Admissions) at 7–8. Statements fifteen and sixteen reveal that RCI has conceded its violation of the ERISA § 515 mandate that employers make contractually-required contributions to union funds,[1] unless withdrawal is permitted. RCI has also conceded that its violation of § 515 renders it liable for attorney's fees and costs under ERISA § 502(g)(2).[2]

Rule 36(b) of the Federal Rules of Civil Procedure provides that a court may permit the withdrawal of admissions "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal . . . will prejudice him in maintaining his action or defense on the merits." Allowing withdrawal would certainly preserve the merits of this case, as defendant would be able to argue that it satisfied all of its contractual liability to the union funds, and owes nothing more. That leaves the question of whether withdrawal of the admissions and substitution of the proposed answers would prejudice the plaintiffs.

RCI asserts that the withdrawal and substitution would not prejudice plaintiffs. It points out that its proposed responses merely restate the denials and affirmative defenses set forth in the answer to the complaint. RCI also asserts that the withdrawal and substitution will not deprive plaintiffs of time needed to conduct discovery. RCI points out that its response to the request for admissions was due on April 29, 1985, and discovery closed on May 1, 1985. Defendant concludes from this that plaintiffs could not have used the responses to aid in their discovery, even if the responses had been timely.

Plaintiffs disagree, arguing that they would be prejudiced from the withdrawal of admissions and substitution of the proposed answers. Plaintiffs complain that their discovery has been hampered by defendant's conduct. Specifically, they con-

---

1. ERISA § 515, 29 U.S.C. § 1145, provides that: Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

2. ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), provides in pertinent part that: In an action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

tend that they have been unable to investigate RCI's denials and affirmative defenses, as defendant has ignored plaintiffs' interrogatories and request for production of documents.

Plaintiffs are complaining about prejudice from defendant's failure to respond to the interrogatories and production request, however, and are not complaining about prejudice from the withdrawal of defendant's admissions. Plaintiffs have failed to satisfy the court that they would suffer prejudice from the withdrawal of admissions and substitution of the proposed responses. Accordingly, defendant's motion for partial withdrawal of admissions and substitution of responses is hereby granted.

## II. *Plaintiffs' Motion for Summary Judgment*

■ RCI admits that it failed to contribute to the union funds the full amount for overtime hours required by RCI's collective bargaining agreements. Accordingly, RCI paid the union funds for the contribution shortfall itself. The trustees now move for summary judgment on their claim that RCI owes the funds interest, liquidated damages, attorney's fees, and other costs, in addition to the amounts already paid.[3] Plaintiffs' motion will be analyzed on the basis of the fourteen statements that defendant has admitted, as well as on the pleadings and affidavits that have been submitted.

Plaintiffs argue that RCI is contractually obligated to pay liquidated damages, interest, fees and costs in the event that RCI fails to make proper contributions to the funds. The collective bargaining agreements between RCI and the international union incorporate by reference the terms of the contracts between Local 671 and the Monroe contractors. These latter contracts provide the union funds with remedies against employers who fail to remit in a timely fashion the entire contribution due and owing to the funds. The Local 671 contracts state that the trustees may recover, in addition to the delinquent contributions themselves: (a) liquidated damages in an amount to be established by the trustees; and (b) attorney's fees and court costs expended by the trustees in securing compliance with the contract. *See* Labor Agreements between Local 671 and the Monroe contractors, art. IV, § 7(a)–4 (1978–80; 1980–82) (Exhibits B and C to complaint). Pursuant to this authority, the trustees adopted rules and regulations specifying the amount of liquidated damages to be charged to delinquent employers, effective on or after July 15, 1980. *See* Promulgations of Rules and Regulations (Exhibits 2A and 2B to LaJiness Affidavit).

The agreements between Local 671 and the Monroe contractors also bind the employer to the terms of the trust agreements of the two union funds at issue in this case, and to all documents promulgated by the trustees. The trust agreements of both funds give the trustees power to collect unpaid contributions from the employer,

> including interest thereon and all costs incurred in effecting said collection, including reasonable attorneys fees. Trustees are hereby given the power to add to the remittance of any Employer a reasonable late charge, to be fixed by the Rules and Regulations ... or as may be provided in the applicable Collective Bargaining Agreement, for failure to make prompt payments to the Trust Fund ... Failure by an Employer to pay the Amounts due from him hereunder to the Trust Fund shall be deemed a breach of this Agreement by the Employer and of the underlying Collective Bargaining Agreement.

*See* Amended Agreements and Declarations of Trust, art. II, § 4 (Exhibits 1A and 1B to LaJiness Affidavit).

---

**3.** As previously indicated, RCI has paid the union funds nearly $190,000. The trustees appear to be claiming that RCI owes the funds $6,104.35 more in contributions, although this is not entirely clear from the record. It is clear, however, that this case primarily concerns RCI's liability for interest, liquidated damages, fees, and costs, rather than RCI's liability for the contributions.

Plaintiffs have established that RCI's contractual liability to the funds extends beyond the amount of the delinquent contributions themselves. The collective bargaining agreements clearly obligate RCI to pay the funds the contributions plus interest, liquidated damages, attorney's fees, and costs. RCI's refusal to pay amounts due under the contracts makes it liable to the plaintiff trustees in either a § 301 breach of contract action, or in an action for violating ERISA § 515.

■ RCI asserts two affirmative defenses to avoid liability to the funds in excess of the amounts already paid. First, RCI contends that the trustees' conduct estops them from collecting liquidated damages, interest, fees, and costs. The defense of estoppel "focuses upon the effects of an obligor's conduct on an obligee, and arises when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief." *Central States, S.E. and S.W. Areas Pension Fund v. Ekco Prod., Inc.,* 581 F.Supp. 374, 378 (N.D.Ill.1984) (citation omitted). RCI points out that it submitted remittance reports to the trustees for three years before the trustees requested the audit that revealed the overtime rate error. RCI asserts that its mistake was "readily apparent from the face of the monthly remittance reports." Brief in Opposition at 3. The trustees, however, accepted the incorrect contributions without comment almost to the end of the Fermi 2 project. RCI contends that it relied on the trustees to monitor its reports. It further asserts that this reliance was to its detriment, as it has had to pay large amounts to the funds to rectify its error and it may be found liable for additional amounts in the present lawsuit.

Defendant's estoppel argument is unsound for two reasons. First, RCI appears to regard the trustees as estopped only from collecting the amounts contested in this case. RCI concedes its liability to the trustees for the overtime contributions themselves. If the trustees misled RCI into making incorrect contributions, the estoppel should apply to the contributions, as well as to such items as interest and costs. Given that RCI was liable for the delinquent contributions themselves, its contracts automatically provide for additional liability for liquidated damages, interest, fees, and costs.

Second, RCI's estoppel argument is unsound because it has failed to show any acts by the trustees that misled it into making the incorrect contributions. RCI should have known the rates of contribution specified by the contracts to which it bound itself. It does not argue that the trustees ever told it to ignore or alter the provisions for overtime hour contributions. In fact, it appears clear that the trustees did not know that RCI was making a mistake, and that they promptly acted to rectify the error as soon as they found it. RCI thus has produced no evidence to support its claim that the trustees misled it.

None of the cases cited by RCI supports its assertion of an estoppel defense in the present case. In *Ekco, supra,* the court found that the trustees were estopped from arguing that the employer had to contribute to the fund for employees after thirty days of employment, rather than after one year. The *Ekco* trustees, however, "intentionally relinquished a known right" to contributions after thirty days. 581 F.Supp. at 378. No such intentional relinquishment is present in this case. Moreover, the employer in *Ekco* was asserting the estoppel defense as to the contributions themselves, and not as to liquidated damages, interest, fees, and costs. In *Central States S.E. and S.W. Areas Pension Fund v. Kraftco, Inc.,* 589 F.Supp. 1061 (M.D.Tenn.1984), the issue was whether the employer had to contribute to the fund for employees who had worked for either thirty or ninety days, as provided by the collective bargaining agreement, or whether the employer could wait thirty-six months. Local union representatives had agreed in a "side letter" that the employer could wait thirty-six months. The court rejected the employer's argument that the side letter estopped the

trustees from demanding contributions after thirty or ninety days. It reasoned the "[t]he Fund's right to expect proper contributions from Kraftco could not be undermined by secret side agreements in which the Fund's trustees never participated." 589 F.Supp. at 1075 (citation omitted). *Kraftco* supports the denial of the estoppel defense here. In the present case, as in *Kraftco*, the trustees failed to authorize the employer's disputed practice.[4]

RCI next asserts a laches defense. "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir.1979), *cert. denied*, 477 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)). "The essence of laches is unreasonable delay that prejudices the defendant." *EEOC v. K Mart Corp.*, 694 F.2d 1055, 1060 (6th Cir.1982) (quoting *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817, 822 (6th Cir.1981)). RCI correctly asserts that ERISA imposes on fund trustees the fiduciary duty to provide benefits to plan participants and their beneficiaries, and to preserve and maintain the assets entrusted to them. ERISA § 404, 29 U.S.C. § 1104. *See also Kraftco, supra*, at 1074–75. Defendant concludes that the trustees breached this fiduciary duty by failing to monitor and detect the remittance reports, and that this breach prejudiced it. At the very least, RCI argues, its laches defense raises questions of fact about the diligence of the trustees that makes summary judgment inappropriate.

 RCI's laches defense suffers from the same two problems as its estoppel defense. First, any laches on the part of the trustees did not excuse RCI from its liability for the overtime hour contributions themselves, so it does not excuse RCI from its contractual liability for liquidated damages, interest, fees, and costs. Second, the record in this case does not reveal any unreasonable delay by the trustees.

Plaintiffs have established RCI's contractual liability to the funds for liquidated damages, interest, fees, and costs. RCI may not assert the defenses of estoppel or laches to defeat this liability. Plaintiffs' motion for summary judgment must therefore be granted.

### III. *Conclusion*

Defendant's motion for partial withdrawal of admissions and substitution of proposed responses is granted. Plaintiffs' motion for summary judgment is granted, based on defendant's fourteen admitted statements, the pleadings, and the affidavits submitted in this case. Plaintiffs shall submit an itemized account detailing the amount of liquidated damages, interest, fees, and costs that they believe defendant owes each fund. This account shall be submitted within thirty (30) days of the date of this opinion and order. Defendant may file a response that details any objections it has to the contents of the account within fifteen (15) days of the filing of that account. The court shall then enter judgment in favor of plaintiffs.

SO ORDERED.

---

4. Another case cited by RCI appears to conflict with the holding of *Kraftco*. In *Bush v. I. & O.A. Slutzky, Inc.*, 99 A.D.2d 676, 472 N.Y.S.2d 211 (App.Div. 4th 1984), the court denied the trustees' motion for summary judgment, finding that the employer's estoppel defense created a question of fact. Union representatives had authorized the employer's failure to make the disputed contributions to the union funds. It is unclear why the *Bush* court reasoned that the actions of the union representatives could bind the trustees of the funds. In any event, *Bush* does not apply to the facts of this case, as the representatives of Local 671 did not authorize RCI's contributions for overtime hours.