**In the Matter of MILLER BLOCK COMPANY, INC., Debtor.**

**Bankruptcy No. 85–1636.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 27, 1986.

---

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for trustee.

Lucille N. Wick, Wick, Rich, Fluke & Streiff, Pittsburgh, Pa., for Western Pa. Teamsters and Employers Pension Fund.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before this Court is the Trustee's Objection To The Proof Of Claim filed by the Western Pennsylvania Teamsters and Employers Pension Fund. The Trustee acknowledges that the claim for delinquent contributions in the amount of $972.00 is in fact a priority claim pursuant to 11 U.S.C. § 507(a)(4); however, he objects to the inclusion of liquidated damages and attorney's fees as being allowable as part of the claim.

Based upon the hearing and briefs thereon, this Court finds that the liquidated damages and attorney's fees requested by the Fund are not entitled to a priority under § 507(a)(4)(A) of the Bankruptcy Code, nor do they constitute an allowable unsecured claim.

### FACTS

The Miller Block Company, Inc. (hereinafter "Debtor") was a seller of block and other concrete products, which found it necessary to file a voluntary petition for relief in July of 1985. At the time of the filing it was a signatory to a Collective Bargaining Agreement which required, *inter alia*, weekly contributions to the Teamsters Pension Fund (hereinafter "Fund"). The Debtor failed to make the required contributions for three (3) employees, beginning April 29, 1985 and ending July 11, 1985; and, pursuant to the pension contract, the Fund filed a Proof of Claim in the amount of $972.00 for the unpaid contributions, as well as $194.40 for liquidated damages and $194.40 for attorney's fees.

### ANALYSIS

It is alleged that two statutory provisions of the United States Code are in conflict in the case at bar.

Bankruptcy Code section 507(a)(4)(A) of the Bankruptcy Code states in pertinent part:

(a) The following expenses and claims have priority in the following order: (4) ... allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first ...

The Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1132(g)(2), states that:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce Section 1145 [delinquent contributions] of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

A) the unpaid contributions

B) interest on the unpaid contributions

C) an amount equal to the greater of:

(i) interest on the unpaid contributions or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under subparagraph (A)

D) reasonable attorney fees and costs of the action to be paid by the defendant; and,

E) such other legal or equitable relief as the court deems appropriate.

Thus, the Bankruptcy Code allows a priority status only to claims for *delinquent contributions* to employee benefit plans *for services rendered* within 180 days prior to filing, while ERISA requires *attorney's fees* and *liquidated damages* to be added to the payment for delinquent contributions in cases in which a judgment is rendered in favor of the Plan.

In *Central States Southeast and Southwest Areas Pension Fund v. Alco Express Co.*, 522 F.Supp. 919 (E.D.Mich.1981) the Court, in interpreting ERISA, held that retirement funds must meet funding standards and "federal pension law must permit trustees of plans to recover delinquent contributions efficaciously". *Id.* at 927–28 (quoting staff of Senate Committee on Labor and Human Resources, 96th Cong. 2d Sess., S. 1076). The public policy behind this legislation is to "foster the preservation of the private multi-employer plan system which mandates that provisions be made to discourage delinquency and simplify delinquency collection". *Id.* at 928.

Therefore, the District Court held that a plan sponsor that prevails in any action to collect delinquent contributions will be entitled to include delinquent contributions, court costs, attorneys fees and liquidated amounts in its judgments.

Despite the aforementioned public policy, one can only implement this policy, and ERISA itself, according to the provisions written into the statute.

29 U.S.C. § 1144(d) states the following:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States (except as provided in Sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

Sections 1031 and 1137(b) have no relevance to the issue presently before this Court.

In *In re Graham*, 726 F.2d 1268 (8th Cir.1984), the Court held that, "ERISA specifically provides that its provisions were not to affect the operation of other federal statutes." *Id.* at 1273. *In re Graham* dealt with a different issue of bankruptcy law; however the Eighth Circuit looked to the legislative history behind the relevant bankruptcy law section and found no language in either the legislative history or the text of the law to support the premise that ERISA should supersede the relevant bankruptcy law section.

Similarly in the case at bar, neither the legislative history nor the text of § 507

provides any support for the premise that the public policy behind ERISA should supersede the policy of the Bankruptcy Code. Section 507(a)(4)(A) only allows a priority for prepetition *delinquent contributions,* for services rendered by the employee within 180 days prior to filing. No mention is made relating to a priority for attorney's fees or liquidated amounts. Had Congress desired to integrate the ERISA provisions into the Bankruptcy Code, just as it integrated parts of other statutes into the Bankruptcy Code, it could have done so. The silence of the Code indicates the clear intention to generally exclude these ERISA provisions from the Bankruptcy Code.

In *In re Pittston Stevedoring Corp.,* 40 B.R. 424 (S.D.N.Y.1984), the Court found it abundantly clear that, "broadening of the contours of the Code section dealing with wage priorities cannot be undertaken by judicial fiat. Rather this expansion must be accomplished by legislative modification". *Id.* at 428.

If the definition of delinquent contributions to employee benefit plans, for services rendered within 180 days prior to filing is to be expanded, that result:

> [s]hould be achieved by the method of Congressional amendment. That technique of law revision would afford the opportunity for full debate by labor unions, credit associations, bankruptcy law experts and others. It would permit Congress to adjust, deliberately, competing economic interest and conflicting social and public policies.

*Id.* at 428–29, (quoting *In re Sleep Products,* 141 F.Supp. 463, 470 (S.D.N.Y.1956).

It should be noted that since the adoption of ERISA in 1974, Congress has twice examined the bankruptcy laws. In 1978 the Bankruptcy Reform Act was enacted, which completely revamped the bankruptcy law. Additionally, the Bankruptcy Amendments and Federal Judgeship Act of 1984 was a clear attempt by Congress to correct the 1978 Act in any manner deemed necessary. Had Congress seen fit to include the provisions of ERISA in the Bankruptcy Code, there existed more than sufficient opportunity to do so.

Furthermore, Congress was fully aware of the specific language in § 507(a)(4)(A) of the Bankruptcy Code relative to *delinquent contributions;* had they desired to include liquidated damages and attorney's fees as a priority claim to accommodate the policies of ERISA, they would have done so.

In *In re Crouthamel Potato Chip Co.,* 43 B.R. 934 (Bktcy.E.D.Pa.1984), the Court, in a case dealing with a request for postpetition holiday pay, held that § 507 does not allow a priority for claims arising after the Chapter 11 filing. And as to the priority status allotted to "vacation pay" pursuant to § 507, only "earned" vacation pay may receive a priority. Pay for future holidays was not "earned" because the employees in this case were dismissed before the holiday occurred. Again the Court adopted a strict construction of the language found in the Bankruptcy Code.

In *In re Graham, In re Pittston Stevedoring Corp.* and *In re Crouthamel Potato Chip Co.,* all three courts logically followed the policy of strictly construing the Code section according to its terms, where no evidence of contrary or varied interpretations could be found.

Likewise in *Matter of Goff,* 706 F.2d 574 (5th Cir.1983), the Court cited ERISA § 1144(d), and stated that the Bankruptcy Code was generally intended to broaden the "property of the estate" available to creditors in bankruptcy. The combination of this policy-based provision of the Bankruptcy Code and ERISA's specific provision precluding interference with the operation of federal law, renders the Bankruptcy Code superior and thus, effective over any ERISA provision to the contrary. *See also, In re Ottawa Cartage, Inc.,* 55 B.R. 371 (N.D.Ill.1985) and *In re Pulaski Highway Express, Inc.,* 41 B.R. 305 (Bktcy.M.D. Tenn.1984).

*In Matter of Baptist Medical Center of New York, Inc.,* 52 B.R. 417 (E.D.N.Y. 1985), the Court held that the "shall

award" language of ERISA should not be read to supersede the provisions of the Bankruptcy Code.

In that case the Complainant requested the Bankruptcy Court to interpret the words "shall award" in ERISA § 1132(g)(2) to mean "shall immediately award". In rendering its Opinion, the Court held that "shall award" merely delineates the various forms of relief a court should ordinarily incorporate. "Nowhere in these provisions is it stated that a court is without discretion to view the totality of the circumstances in determining how the judgment is to be enforced." *Id.* at 422.

Similarly in *In re Pulaski Highway Express, Inc., supra,* wherein on the eve of bankruptcy a debtor transferred payments pursuant to a judgment for arrearages to its employee pension fund, the Bankruptcy Court held that the transfer payment must be returned as a preference under § 547 of the Bankruptcy Code. The court followed the reasoning of *Matter of Goff, supra,* that the Bankruptcy Code supersedes ERISA.

In light of *In re Columbia Motor Express, Inc., In re Pulaski Highway Express, Inc., Matter of Goff* and *In re Graham,* this Court fails to see the relevance of *LaJiness v. Reactor Controls, Inc.,* 642 F.Supp. 27 (E.D.Mich.1985). and *In re Ram,* 5 E.B.C. 1395 (1984), both cited by the Pension Fund. *LaJiness* deals with an ordinary ERISA case. The parties entered into a contract, which required the Employer to contribute to the union benefit funds at a higher rate for overtime hours worked by union members than for regular or straight-time hours. The Employer admitted that it only contributed the straight-time contribution rather than the higher contribution required, and the District Court awarded the amounts that should have been paid, along with liquidated damages, interest, fees and costs. The case at bar is distinguished as it deals with a bankruptcy debtor who failed to make certain prepetition pension contributions. Therefore, such cases, which do not deal with the Bankruptcy Code and its relationship with ERISA, have no relevance to the issue at hand.

*In re Ram* also addresses a different issue from the case at bar. The instant case deals with awarding attorney's fees and liquidated damages as part of the Code's § 507 priority for prepetition pension contributions that were not paid. *In re Ram* deals with awarding attorney's fees as part of postpetition, ongoing expenses and not as part of a prepetition priority. In *In re Ram,* the Court specifically stated that § 507 was not appropriate, and therefore, its discussion is not relevant to our decision.

■ Although the Western Pennsylvania Teamsters and Employers Pension Fund considers the 'Attorney's Fees' and 'Liquidated Damages' clauses in their pension contract to be entitled to the priority status allotted to § 507(a)(4) delinquent prepetition contribution to the pension fund, this Court finds no case law nor Congressional policy grounds to support such a contention and will not grant such a priority status.

■ Furthermore, there exists no provision in the Code to allow the Fund's liquidated damages and attorney's fees as general unsecured claims. The Bankruptcy Code is very clear on the issue of attorney fee awards for the bankrupt estate.

As to creditor attorneys, only two provisions have been made:

1) Sections 328(a), 330(a), 503(b)(2) and 1103 provide for compensation from the estate to counsel for The Unsecured Creditors Committee. However, such reimbursement requires that there have been some *benefit* inured to the estate.

2) Section 506(b) provides for reasonable attorney's fees and costs to an *oversecured* creditor, when the contract agreed to by the parties includes provisions for fees and costs.

In this case, the Fund is an unsecured creditor, as evidenced by its § 507 priority status. Furthermore, the Fund has not operated to create any benefit for the es-

tate; rather, these attorneys have served their client only, and this is *not* compensable from the estate. *See In re Windsor Communications Group, Inc.*, 54 B.R. 504 (Bktcy.E.D.Pa.1985).

An appropriate Order will be issued.