In re CIRRUSCORP, Debtor.

PRINCIPAL MUTUAL LIFE
INSURANCE COMPANY,
Appellant,

v.

The JOINT COMMITTEE OF
UNSECURED CREDITORS,
CIRRUSCORP, Appellee.

No. Civil Action H–95–1485.

United States District Court,
S.D. Texas,
Houston Division.

May 23, 1996.

Jeffrey E. Spiers, Douglas G. Walter, Andrews & Kurth L.L.P., Houston, Texas, for Appellant.

Sean R.D. Gorman, Burns Wooley & Marseglia, Houston, Texas, for Appellee.

OPINION ON AFFIRMING THE
BANKRUPTCY COURT

HUGHES, District Judge.

1. *Introduction.*

An insurance company seeks to establish a priority for its claim for expenses for the debtor's medical insurance policy for employees. Because most of the debt arose more than 180 days before CirrusCorp filed for bankruptcy, only $84,009.39 of Principal Mutual's claim is entitled to priority. The bankruptcy court's decision will be affirmed.

2. *The Policy and the Problem.*

CirrusCorp bought medical insurance for its employees from Principal Mutual. CirrusCorp filed for bankruptcy on January 8, 1993, and Principal Mutual requested priority for $502,599.70 in overdue insurance premiums and other fees that came due on October 31, 1992, when the policy was terminated for nonpayment of premiums.

Under the insurance policy, which operated more like a claim management service than risk transfer, CirrusCorp paid a monthly premium to Principal Mutual. Of the premium, part was paid directly to Principal Mutual. CirrusCorp kept the rest in separate accounts as "plan contributions" and "reserves." Principal Mutual estimated the amounts needed to cover claims incurred and submitted during a policy year. Principal Mutual reimbursed itself for medical expense claims from the plan contributions, funding deficits and repaying itself from plan contributions it later received. When the policy ended, CirrusCorp was to pay Principal Mutual the (a) excess plan contributions and

other reserve funds for the final contract year, (b) the reserve, and (c) interest on the reserve.

When CirrusCorp's policy ended on October 31, 1992, it owed Principal Mutual a total of $502,599.70 for these fees, pooling charges, and COBRA continuation fees.

### 3. *Priority Period.*

When a debtor's assets are insufficient to cover its debts, statutes govern which debts will be paid first and how the assets will be distributed among creditors. Claims for contributions to employee benefit plans, including medical insurance, arising from services within 180 days before a debtor files for bankruptcy have priority. 11 U.S.C. § 507(a)(4) (1995).

CirrusCorp filed for bankruptcy on January 8, 1993; one hundred eighty days earlier was July 12, 1992. Claims arising before then are not entitled to priority. Principal Mutual's policy year for CirrusCorp's employees ended on October 31, 1992.

Principal Mutual insists that because all of CirrusCorp's financial obligations came due on October 31, within the priority period, the entire debt should receive priority. Principal Mutual is entitled to priority only for the debt that arose from claims paid during the 111 days between July 12 and October 31, 1992. CirrusCorp's total debt must be prorated to determine the amount attributable to that period.

### 4. *Arguable Assets.*

#### A. *Excess Plan Contributions.*

CirrusCorp owes Principal Mutual $172,324.59 in excess plan contributions. Of that amount, $42,437 accrued during the 1991 policy year. That amount is not attributable to services rendered in 1992. The remaining $129,887.59 divided by the 244 days of the policy year between March 1 and October 31, 1992, can be prorated at $532.33 per day. That daily rate multiplied by the 111 days of the priority period leaves $59,088.20 entitled to priority.

#### B. *Reserve Funds.*

When CirrusCorp's policy ended on October 31, 1992, it owed $246,465.56 to Principal Mutual for reserve funds, of which $233,326 accrued during the 1991 policy year. The other $13,139.56 divided by the 244 days of the policy year is prorated at $53.85 per day for the 1992 policy year. Multiplied by 111 days, reserve funds of $5,977.42 accrued during the priority period.

#### C. *Interest on Reserve Funds.*

This amount came due on termination of the policy. Principal Mutual insists that because the policy ended during the priority period, the entire $31,354.07 interest due at that time is entitled to priority. The interest, however, is a percentage of the total reserve. Only the $5,977.42 reserve entitled to priority may be used to calculate the interest that is also entitled to priority. Of the total $246,465.38 reserve, $31,354.07 is 12.72%, so priority will be given to only $760.41, which is 12.72% of the $5,977.42 reserve accrued during the priority period.

#### D. *Premiums.*

The October 1992 premiums of $17,403.36 are entitled to priority.

#### E. *Pooling Charges.*

Principal Mutual asserts that it is entitled to priority for $37,070 pooling charges because the charges came due on termination of the policy. The pooling charges accrued during the 1991 policy year not during the priority period, and they will not receive priority.

#### F. *COBRA Fees.*

COBRA Fees are $60 per employee. Six CirrusCorp employees quit working before July 12, so the $360 attributable to them did not arise even partially from services rendered within 180 days before CirrusCorp filed for bankruptcy. The remaining $780 has priority, since it arose at least in part during the priority period.

### 5. *Out-of-Pocket Expenses.*

Principal Mutual argues that equity and public policy require that it be reimbursed for the $265,511.05 for employees' medical expenses that it actually paid after the policy ended. Principal Mutual reasons that reimbursement claims submitted shortly after the policy ended are likely to have arisen during the priority period. While it is true that the claims may have accrued during the priority period, Principal Mutual has already been reasonably paid for its expenses

in covering these claims by the premiums it collected, which were payment of its estimate of the expected claims.

Principal Mutual calculated the amount of money needed to cover the medical expenses of CirrusCorp's employees. The amount intended to cover the period from July 12 until October 31, 1992, was only a fraction of the entire amount that came due when the policy ended on October 31, just as that time period was only a fraction of the total length of the insurance policy. That CirrusCorp's total obligations came due during the priority period does not mean that the entire amount due was calculated to cover the 111 days. CirrusCorp's debt arose from the whole period of its policy with Principal Mutual, not just during the 111-day overlap of the 1992 policy year and the 180-day priority period. Only the portion of the debt attributable to those 111 days is entitled to priority. Principal Mutual is not entitled to more equity than CirrusCorp's other creditors for the expenses it actually incurred in fulfilling its insurance contract with CirrusCorp.

6. *Conclusion.*

Only $84,009.39 of CirrusCorp's debt to Principal Mutual arose during the 180 days before CirrusCorp filed for bankruptcy, and only that amount is entitled to priority. The bankruptcy court's decision will be affirmed.