**In re CORNELL & COMPANY, INC., Debtor.**

**Bankruptcy No. 96–31650DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 14, 1998.

---

Maureen Steady, Ciardi, Maschmeyer & Karalis, P.C., Peter F. Marvin, Toll, Ebby, Langer, & Marvin, Philadelphia, PA, for Debtor.

Magdeline D. Coleman, Sagot, Jennings & Sigmond, Philadelphia, PA, for Union.

Lawrence J. Tabas, Philadelphia, PA, for SEPTA.

Barry D. Kleban, Philadelphia, PA, for Creditors' Committee.

David C. Dreifuss, Nagel, Rice & Dreifuss, Livingston, NJ, for National Fire Insurance Co.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, U.S. Trustee.

### OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant proof of claim litigation requires us to analyze several aspects of 11 U.S.C. § 507(a)(4) which appears to have escaped significant previous judicial scrutiny. We hold, consistent with the union's position in the matter before us, that this Code section extends fourth priority classification to all employee-benefit plan indebtedness arising within 180 days of a bankruptcy filing to which pre-petition payments by the debtor have not been allocated. We also hold that

the limitation to the extent of liability under § 507(a)(4)(B) is intended only to limit payments by the debtor to any particular employee to $4,000 in total wages and benefit plan payments. Finally, in keeping with the instant Debtor's position, we hold that "liquidated damages" for late payments are not plan "contributions" entitled to priority treatment.

## B. PROCEDURAL AND FACTUAL HISTORY

CORNELL & COMPANY, INC. ("the Debtor"), a general contracting firm, filed the voluntary Chapter 11 petition underlying this dispute on December 2, 1996. Prior to and apparently subsequent to the bankruptcy filing, the Debtor and the Cement Masons Local Union No. 592 ("the Union") were parties to collective bargaining agreements ("the Agreements") which required, *inter alia,* that the Debtor submit reports as well as that it pay monthly contributions to the Cement Masons Union Local No. 592 Pension Fund, the Cement Masons Local Union No. 592 Welfare Fund, and the Cement Masons Union Local 592 Joint Apprenticeship Training Fund and Association Industry Advancement Program General Building Contractors ("the Funds") for employees that were covered under the Agreements.

On January 17, 1997, the Funds filed a proof of claim ("the Claim"), classified as a priority unsecured claim under 11 U.S.C. § 507(a)(4). On January 15, 1998, the Debtor filed an objection ("the Objection") to the claim. After one continuance, the Objection came before us for a hearing on March 11, 1998. The parties agreed to submit the Objection on a written Stipulation of Facts ("the Stipulation") and briefs. Although the Stipulation and the Union's brief were several days late, all matters were submitted by March 27, 1998.

The heart of the uncontested facts recited in the Stipulation are as follows:

6. During the 180 days prior to the Petition Date, contributions arising from services rendered by employees covered by the Agreements are as follows ("the Contribution Assessments"):

| | | |
|---|---|---|
| June | 1996 | $10,812.44 |
| July | 1996 | $16,025.92 |
| August | 1996 | $ 7,162.20 |
| September | 1996 | $ 7,889.20 |
| October | 1996 | $12,306.06 |
| November | 1996 | $14,840.28 |
| | | $69,036.10 |

7. Unpaid liquidated damages associated with unpaid contributions arising from services rendered by employees covered by the Agreements within 180 days prior to the Petition Date were $5,419.57.

8. The Debtor made the following payments to the Cement Masons Funds on account of services rendered by employees covered by the Agreements on the following dates:

| | |
|---|---|
| June 14, 1996 | $ 5,245.71 |
| July 17, 1996 | $ 9,905.16 |
| July 31, 1996 | $10,812.44 |
| September 23, 1996 | $16,025.92 |
| October 2, 1996 | $ 7,162.20 |
| November 1, 1996 | $ 7,889.27 |
| | $57,040.70 |

9. On January 4, 1997, the Debtor paid to the Cement Masons Fund on account of services rendered by employees covered by the Agreements the amount of $2,472.67 for the week ending November 30, 1996 prior to the Petition Date.

## C. DISCUSSION

At issue is whether the Funds' Contribution Assessments are claims that are entitled to priority status under § 507(a)(4), and, if so, in what amount. The determination of this issue requires interpretation of 11 U.S.C. § 507(a)(4), which reads as follows:

§ 507. Priorities

(a) The following expenses and claims have priorities in the following order:

. . .

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $4,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid · by the estate on behalf of such employees to any other employees benefit plan....

The Debtor notes that its last four prepayments, from July 31, 1996, through November 1, 1996, were identical to the Contribution Assessments for July 1996 through September 1996. *See* page 3, ¶¶ 6 and 8 *supra.* It observes that the Funds, allegedly wrongfully for purposes of a § 507(a)(4) determination, allocated certain of these payments to Contribution Assessments due for periods prior to the 180–day pre-petition period. It therefore argues that only the unpaid October 1996 and November 1996 Assessments, equal to $27,146.34, are potentially entitled to a priority.

Next, the Debtor argues that the $5,419.57 component of the Union's claim designated as liquidated damages is not entitled to a priority, citing *In re Miller Block Co.,* 63 B.R. 99, 101–02 (Bankr.W.D.Pa.1986).

Then, it makes what it terms "the § 507(a)(4)(B) calculation." The parties agree that sixteen (16) Union workers, fourteen (14) of which have unpaid Assessments claims, worked · for the Debtor within the 180–day period. The § 507(a)(4)(B)(i) figure is therefore $56,000. From this the Debtor calculates a § 507(a)(4)(B)(ii) figure by adding the $57,040.70 sum of its payments to-.wards the Assessments within the 180–day period and $2,742.67 stipulated as the Debtor's post-petition payments covering Assessments for the period after November 1, 1996, and just before its filing. *See* page 3, ¶¶ 8 and 9 *supra.* Since these payments exceed the $56,000 § 507(a)(4)(B)(i) figure, it argues that the Funds are entitled to no priority claim and, presumably, only $27,146.34 as an unsecured claim.

The Union calculates the claim differently. The Union admits that it allocated all but $22,446.46 of the Debtor's payments in the 180–day period to pre–180 day period Assessments, but contends that this allocation

is permissible under the Agreements. The Union also defends its addition of the liquidated damages as part of the priority claim on the ground that such penalties are a portion of the Assessments . as per the Agreements. It hence concludes that it is entitled a priority claim of $74,455.67 ($69,036.10 in Assessments plus the $5,419.57 liquidated damages), less the $22,446.46 of the Debtor's 180–day period payments allocated the Assessments in the 180–day period, or $52,-009.20.

As to the § 507(a)(4)(B) calculation, the Union argues that, since § 507(a)(4)(B)(ii) references "amounts paid by the *estate* " (emphasis added), only post-petition payments are counted, because it is only at filing that a debtor's "estate" is created, citing *In re Wu,* 173 B.R. 411, 413 (9th Cir. BAP 1994). Thus, only the $2,742.67 post-petition payments are deducted from the $56,000 figure in the Union's § 507(a)(4)(B)(i) calculation, leaving the entire $52,009.20 as eligible for priority classification.

■  For the most part, the Union's position appears correct, although we believe that the § 507(a)(4)(B) limitation is narrower than either party contends. As we read it, § 507(a)(4) is silent regarding the allocation of a debtor's payments during the 180–day period. In the absence of Code requirements to the contrary, the general rules of allocation, described thusly by us in *In re Lease–A–Fleet, Inc.,* 131. B.R. 945, 949 (Bankr.E.D.Pa.1991), *aff'd in part & rev'd in part on other grounds,* 141 B.R. 63 (E.D.Pa. 1992), *aff'd,* 983 F.2d 1051 (3d Cir.1992), apply:

As in *In re Comer,* 716 F.2d 168, 175 (3d Cir.1983),

[t]here appears to be little dispute between the parties that the applicable law on the substantive issue of allocation was stated by the Superior Court of Pennsylvania in *Page v. Wilson,* 150 Pa.Super. 427, 433, 28 A.2d 706, 709 (1942), and later quoted with approval by the Pennsylvania Supreme Court in *In re Woods' .Estate,* 350 Pa. 290, 294, 38 A.2d 28, 30 (1940). The rule is stated as:

"The debtor has the right to make the application in the first instance, and failing to exercise it, the same right devolves upon the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles.... [i]t will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the debt lease secured, unless to the prejudice of a surety."

See also Toll–Barkan Co. v. Toll, 193 Pa.Super. 221, 225, 164 A.2d 36, 38 (1960); RESTATEMENT (SECOND) OF CONTRACTS §§ 258, 259, 260 (1982) [cited hereafter as "Restatement"].

Accord, e.g., Pristas v. Landaus of Plymouth, Inc., 742 F.2d 797, 801 (3d Cir., 1984); DuBois Nat'l Bank v. Hartford Accident & Indemnity Co., 161 F.2d 132, 137 (3d Cir.1947); Delaware Dredging Co. v. Tucker Stevedoring Co., 25 F.2d 44, 46 (3d Cir.1928); In re Penn Jersey Corp., 72 B.R. 981, 983 (Bankr.E.D.Pa.1987); Washington Natural Gas Co. v. Johnson, 123 Pa. 576, 593, 16 A. 799, 801–02 (1889); Harker v. Conrad, 12 Serg. & Rawle 301, 305 (Pa.1825); Uhl Constr. v. Fidelity & Deposit Co. of Maryland, 371 Pa.Super. 520, 526, 538 A.2d 562, 565 [1988]; and 29 P.L.S. 162 (1960).

Since there is no evidence of a specific allocation of the payments by the Debtor, the Union was entitled to allocate them as it did, i.e., to the earliest, pre–180–day period Assessments delinquencies.

We have located one somewhat analogous case, In re CirrusCorp., 196 B.R. 76 (S.D.Tex.1996), the result in which appears, at first blush, to point in a different direction. In that case an insurer requested priority for all payments which came due on account of employee benefit plans within the 180–day period. The billing included contributions which accrued before as well as after the 180–day period. The court held that only those contribution liabilities accruing within the 180–day period were entitled to priority. Id. at 77.

We believe that the instant facts are distinguishable from those of CirrusCorp. No issue of allocation of payments within the 180–day period was presented in that case. The instant facts would be comparable if pre–180 day period obligations were admittedly still on the Funds' books on the date of the Debtor's filing. However, they were not, having been offset by the Union's allocations of the Debtor's payments within the 180–day period prior to the bankruptcy filing. There is no statutory justification for allowing the Debtor a credit for payments just because they were made within the 180–day period.

With respect to the § 507(a)(4)(B) limitation, we find that both parties have misread its application to the facts because they have failed to focus on its purpose. As Collier explains, § 507(a)(4) was enacted to overrule pre-Code precedents holding that fringe benefits, unlike wages, were entitled to no priority whatsoever. 3 COLLIER ON BANKRUPTCY, ¶ 507.06, at 507–35 to 507–36 (15th ed. rev.1997), citing Joint Industry Board of Electrical Industry v. United States, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968); and United States v. Embassy Restaurant, Inc., 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959). The intention of the § 507(a)(4)(B) limitation is to nevertheless limit any particular employee's wage-related claims to $4,000. Id., ¶ 507.06, at 507–36; and ¶ 507.06[b], at 507–39. Thus, in § 507(a)(4)(B)(ii), the priority is limited by the amount paid to any particular employee for wages, under 11 U.S.C. § 507(b)(3); payments payable to that particular employee under the plan claimant at issue; and payments payable to that employee under "any other employee benefit plan." (emphasis added). Both parties, in their analysis of § 507(a)(4)(B)(ii), overlook the presence of the word "other" in § 507(a)(4)(B)(ii), and seem to believe, we think erroneously, that the limitation applies to the plan claimant itself.

In light of the analysis, the issue of whether § 507(a)(4)(B)(ii) references pre-petition employee benefit payments, or only post-petition payments by a debtor's estate, is irrelevant. The parties' implicit agreement that this limitation applies to payments to the

plan claimant in some way makes no logical sense and we cannot accept this reading. Collier does not appear to consider this possibility, and no case introduces a § 507(a)(4)(B)(ii) calculation including reference to payments to the plan claimant. Such a calculation would seem antithetical to the statements in *In re Edgar B, Inc.*, 200 B.R. 119, 123 (M.D.N.C.1996), that § 507(a)(4) "simply require[s] a mathematical calculation," by introducing an irrational element which would be difficult to calculate.

■ Since there is no evidence that the account of any employee covered by the Funds included any employees who received in excess of $4,000 in § 507(a)(3) wages and § 507(a)(4) benefits from the Funds and any other plans, § 507(a)(4)(B)(ii) does not limit the Union's priority claim.

The final issue is whether the Union is entitled to priority classification of its claim for $5,419.57 assessed to the Debtor on account of liquidated damages for late payments under the terms of the Agreements. We note at the outset that this claim for liquidated damages would have been higher had the Union not allocated the Debtor's July and August payments and part of its September 1996 payment to the older obligations as it did. The Debtor, in its implicit contention that we should reallocate its payments in the 180-day period, does not appear to suggest that we can or should recalculate the liquidated damages due upward. This observation suggests that our reasoning that we must accept the Union's allocation in determining the amount of the Union's claim, at pages 685–686 *supra*, is correct.

Neither party has cited any cases discussing a plan's right to classify liquidated damages as a component of a § 507(a)(4) claim other than *Miller Block, supra*, and we could not locate any other cases addressing this point either. This may suggest that most plans recognize that such damages are not part of a § 507(a)(4) claim.

*Miller Block* reasons as follows on this point, 63 B.R. at 102:

Section 507(a)(4)(A) only allows a priority for prepetition *delinquent contributions*, for services rendered by the employees within 180 days prior to filing. No mention is made relating to a priority for attorney's fees or liquidated amounts....

We see no reason to differ from the reasoning in *Miller Block*. We note that the conclusion in *Burden v. United States*, 917 F.2d 115 (3d Cir.1990), that equitable subordination of liquidated federal tax penalties is permissible is consistent with this result. Liquidated penalties, though contractionally based, are not actual wages or wage-related benefit plan obligations. They are "frosting on the cake." We believe that, under § 507(a)(4), only the "cake" itself is entitled to priority treatment. *Cf. In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891, 897–98 (Bankr.E.D.Pa.1987) (administrative claims should be narrowly construed to minimize prioritizing of a debtor's scarce resources to certain favored creditors).

■ We therefore conclude that, although the Union is entitled to its liquidated damage claims under the terms of the Agreement, this component of its claim is not entitled to § 507(a)(4) priority classification. We therefore conclude that the Union is entitled to a priority claim of $46,589.63 and a general unsecured claim for the $5,419.57 balance.

## D. CONCLUSION

An order consistent with these conclusions will be entered.