Opinion issued March 21, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00244-CV

————————————

**LTF REAL ESTATE COMPANY, INC. AND TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Appellants**

**V.**

**D&D UTILITY SUPPLY, LLC, Appellee**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2009-03413

## MEMORANDUM OPINION

Appellants, LTF Real Estate Company, Inc. ("LTF") and Travelers Casualty

and Surety Company of America ("Travelers"), challenge the trial court's rendition

of summary judgment in favor of appellee, D&D Utility Supply, LLC ("D&D"),

and denial of their summary-judgment motion in D&D's suit against LTF and Travelers for foreclosure and enforcement of D&D's liens. In three issues, LTF and Travelers contend that the trial court erred in granting D&D summary-judgment, denying them summary judgment, and awarding D&D damages and attorney's fees.

We reverse and render judgment in favor of LTF and Travelers.

## Background

In its seventh amended petition, D&D, a vendor of materials, alleged that FCA Construction Company, LLC ("FCA"), which was an entity "controlled by" Lifetime Fitness, served as a general contractor for the construction of a Lifetime Fitness facility in Humble, Texas ("the project"). FCA contracted with Houston Earthworks Resources, Inc. ("Houston Earthworks"), a plumbing subcontractor, to provide labor and materials for the project, and D&D provided to Houston Earthworks materials that were incorporated into the project. FCA later terminated its contract with Houston Earthworks and retained J&G Plumbing Services, LLC ("J&G") as a replacement. D&D then provided to J&G materials that were incorporated into the project. FCA subsequently terminated its contract with J&G.

D&D further alleged that it did not receive payment for some of the materials that it had provided to both Houston Earthworks and J&G. In an effort to secure payment for its materials, D&D filed two separate "Affidavits Claiming

2

Liens" against the Lifetime Fitness property: (1) for an outstanding balance of $34,088.49 for materials it had provided to Houston Earthworks (the "Houston Earthworks lien") and (2) for an outstanding balance of $90,414.12 for materials it had provided to J&G (the "J&G lien").[1]  LTF and its surety, Travelers, filed separate bonds to indemnify against the liens.[2]

Finally, D&D alleged that LTF was a managing member of and controlled FCA, the contract between FCA and LTF was a "sham contract," and D&D was in a "direct contractual relationship with the owner and [had] a lien as an original contractor."  D&D sought to recover from LTF and Travelers "all amounts due and owing to D&D" resulting from the perfection of the liens and its attorney's fees.[3]

In its motion for partial summary judgment, D&D asked the trial court to rule that both of its liens "substantially compl[ied]" with the Texas Property Code and were "valid and enforceable."  In their summary-judgment motion, LTF and Travelers asked the trial court to rule that D&D had failed to perfect its liens in accordance with the Property Code.  The trial court denied LTF and Travelers' summary-judgment motions and granted D&D's Motion for Partial Summary Judgment, concluding that D&D's liens were "valid perfected liens as a matter of

---

[1]  *See* TEX. PROP. CODE ANN. §§ 53.001–.260 (Vernon 2007 & Supp. 2011).

[2]  *See id.* § 53.171 (Vernon 2007).

[3]  *See id.*  § 53.156 (Vernon Supp. 2011).

3

law." D&D then filed a Motion for Final Summary Judgment in which it asked the trial court to award it damages as provided for in the liens and its reasonable attorney's fees. D&D sought, after certain reductions, damages in the amount of $123,777.82 and attorney's fees "related to only the proceedings to foreclose the liens."

The trial court granted D&D's Motion for Final Summary Judgment, ordering that D&D recover from LTF and Travelers "principal damages" in the amount of $123,777.82, attorney's fees in the amount of $181,055.91, and pre- and post-judgment interest.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). A plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at

4

341. When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

## Liens

In their first and second issues, LTF and Travelers argue that the trial court erred in granting D&D summary judgment and denying them summary judgment because D&D failed to perfect both of its mechanic's liens as a matter of law.

Chapter 53 of the Texas Property Code provides a mechanism by which a subcontractor that furnishes materials for the construction of a building on real property may secure payment for those materials by imposing a lien on the property. TEX. PROP. CODE ANN. §§ 53.001–53.260 (Vernon Supp. 2011). To perfect a lien, the subcontractor "must," among other things, timely provide written notice, by registered or certified mail, of the unpaid balance to the original

5

contractor and the "owner or reputed owner."[4]  *See id.* §§ 53.051, 53.056 (Vernon 2007).  A subcontractor "must" also timely file an affidavit[5] signed by the person claiming the lien, or another person on the claimant's behalf, and the affidavit "must contain substantially" a number of statutorily enumerated items.  *Id.* §§ 53.051, 53.052, 53.054 (Vernon 2007) and 53.053 (Vernon Supp. 2011).  The subcontractor must also timely provide notice of the filing of the affidavit by sending a copy of the affidavit via certified or registered mail to the "owner or reputed owner" and the "original contractor."  *Id.* §§ 53.051, 53.055.

Texas courts have generally recognized that certain statutory requirements pertaining to the securing of a lien under chapter 53 are to be reviewed for substantial compliance.  *See Mustang Tractor & Equip. Co. v. Hartford Accident & Indem. Co.*, 263 S.W.3d 437, 440 (Tex. App.—Austin 2008, pet. denied) ("The mechanic's and materialman's lien statutes, as well as the relevant case law, mandate that a lien affidavit should not be judged by a strict standard but by

---

[4]   Chapter 53 of the Texas Property Code does not define "owner" or "reputed owner."  The term "reputed" is defined as to "be generally said or believed to exist or be of a particular type, despite not being so."  THE NEW OXFORD AMERICAN ENGLISH DICTIONARY 1447 (2001).

[5]   A person claiming a lien must file the affidavit with the county clerk of the county in which the property is located not later than the 15th day of the fourth calendar month after the day on which the "indebtedness accrues."  TEX. PROP. CODE ANN. § 53.052(a) (Vernon 2007).  For purposes of the timely filing of the affidavit, "[i]ndebtedness to a subcontractor . . . who has furnished labor or material to an original contractor or to another subcontractor accrues on the last day of the last month in which labor was performed or the material furnished."  *Id.* § 53.053(c).

whether the claimant substantially complied with the statutory requirements."); *Occidental Neb. Fed. Sav. Bank v. East End Glass Co*., 773 S.W.2d 687, 688 (Tex. App.—San Antonio 1989, no writ) ("For purposes of perfection, only substantial compliance is required in order to fulfill the requirements of the mechanic's and materialman's lien statutes."); *see also First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex. 1974) ("It is well settled that the mechanic's and materialman's lien statutes of this State will be liberally construed for the purpose of protecting laborers and materialmen.").

### *The J&G Lien*

LTF and Travelers argue that the J&G lien is not valid and enforceable because (1) D&D failed to timely provide FCA, by registered or certified mail, with notice concerning the unpaid balances for materials provided to J&G, *see* TEX. PROP. CODE ANN. § 53.056 (referred to herein as the "pre-lien notice"); (2) D&D failed to timely record its Affidavit Claiming Lien, *see id*. § 53.052; (3) D&D's Affidavit Claiming Lien failed to provide the name and last known address of the owner or reputed owner of the property in question, the name and last known address of the person to whom D&D furnished the materials, the description of the materials sold to J&G, and a statement of each month in which the materials were allegedly sold for which payment is requested, *see id*. § 53.054;

7

and (4) D&D failed to timely provide LTF and FCA, by registered or certified mail, with a copy of its Affidavit Claiming Lien, *see id*. § 53.055.

*Pre-Lien Notice*

Section 53.056 provides that in order for a lien to be valid, a claimant other than an original contractor must provide a pre-lien notice of unpaid balances by registered or certified mail to the "owner or reputed owner" of the property in question and "the original contractor," as applicable, at their last known addresses. *See id*. The section further provides,

> If the lien claim arises from a debt incurred by a subcontractor, the claimant must give to the original contractor written notice of the unpaid balance. The claimant must give the notice not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered. The claimant must give the same notice to the owner or reputed owner and the original contractor not later than the 15th day of the third month following each month in which all or part of the claimant's labor was performed or material or specially fabricated material was delivered.

*Id*. § 53.056(b).[6]  A copy of a statement or billing in the usual and customary form is sufficient as notice under this section.  *Id*. § 53.056(f).

D&D presented summary-judgment evidence that on September 11, 2008, it sent a letter addressed to "Owner" Lifetime Fitness/FCA, 2902 Corporate Place, Chanhassen, Minnesota 55317, and "General Contractor" FCA, at the same

---

[6]    The parties refer to the notices required by section 53.056 as the "pre-lien notice," the "60-day notice," and the "90-day notice."

8

Minnesota address. In the letter, entitled "Notice of Claim Demand for Payment regarding the Lifetime Fitness located in Humble, Texas," D&D stated that it was providing the notice, in compliance with sections 53.055 and 53.066, and "Lifetime Fitness" was indebted to D&D in the amount of $81,757.73 for the sale and delivery of "underground utility products." D&D attached to this letter a "sworn statement of account" and a statement reflecting outstanding invoices for materials delivered for the project in August and September 2008. It also attached to the letter a certified mail receipt signed by an "agent" of the recipient on September 18, 2008 with the addressee identified as "Lifetime Fitness/FCA" at 2902 Corporate Place, Chanhassen, Minnesota 55317.

D&D also presented summary-judgment evidence that on October 15, 2008, it sent another letter, entitled "90 Day Fund Trapping Notice (Texas Property Code 53.056)," to "Lifetime Fitness/FCA" at 2902 Corporate Place, Chanhassen, Minnesota 55317. In this letter, D&D stated that it had furnished materials to J&G for the "Lifetime Fitness" project and there remained "due and owing $102,264.66 for materials furnished to your subcontractor in July."[7] D&D attached to this letter

---

[7]    LTF and Travelers assert that, despite all the other evidence demonstrating that D&D provided materials for the project in several months in 2008, the mere reference to "July" in the letter is controlling and constitutes an admission by D&D that it provided materials only in July. LTF and Travelers further assert that this admission constitutes a fatal defect to D&D's case in regard to outstanding balances for materials provided to J&G. LTF and Travelers do not present any

9

a "sworn statement of account" referencing amounts owed by J&G and a statement reflecting outstanding invoices for the months of June, July, August, September, and October 2008. Also attached to this letter is a certified mail receipt signed by an "agent" of the recipient on October 20, 2008 with the addressee identified as "Lifetime Fitness" at 2902 Corporate Place, Chanhassen, Minnesota 55317.

In addition to these notices, D&D presented summary-judgment evidence that on October 29, 2008, it sent a fax to telephone number "(952) 914-9523" with attached documents and invoices for the materials it had provided for the project. In her affidavit, Donna Ortego, custodian of records for D&D, testified that she "personally sent or caused to be sent" this fax on October 29, 2008. Although she did not testify to whom specifically the fax was sent, the fax cover sheet reflects that it was sent by D&D, the transmission result of the fax was "OK," and the fax was sent to the above number. Other summary-judgment evidence establishes that this is the fax number for Sanaz Samie, an accounts payable clerk for "FCA Construction/Lifetime Fitness" who served as D&D's contact regarding payment matters on the project. Attached to the fax cover sheet are numerous invoices pertaining to the materials that D&D provided to J&G and Houston Earthworks. Also attached is a handwritten notation by "Donna," which states, "These are the

evidence controverting the documentary evidence that establishes that D&D actually provided materials to J&G in months other than July.

10

invoices/statements for [Houston Earthworks] and J&G. Please get us paid." The attached invoices reflect due dates for materials supplied to both J&G and Houston Earthworks from August to November 2008. And a statement summarizing the outstanding invoices for J&G indicates an "open balance" of $93,962.86 and reflects "due dates" for billing amounts from August to November 2008.

D&D also cites an October 1, 2008 fax with attached invoices, which reflect "due dates" for balances accruing from July to September 2008. The fax cover sheet reflects that it was sent by D&D to the fax number for Sanz at "FCA Construction/Lifetime Fitness" and the result of the fax was "OK." These invoices reflect an outstanding balance of $89,585.85. In her affidavit, Ortego testified that she "personally sent or caused to be sent" this fax on October 1, 2008.

By its plain terms, section 53.056 required D&D to provide written notice to (1) "the original contractor" of the "unpaid balance not later than the 15th day of the second month following each month in which all or part of" D&D's material was delivered and (2) "the owner or reputed owner" and "the original contractor not later than the 15th day of the third month following each month in which all or part of" D&D's material was delivered. *See id*. § 53.056.[8]

---

[8] D&D was required to send the "same notice" to the "owner or reputed owner" and the "original contractor not later than the 15th day of the third month following each month in which all or part of" D&D's material was delivered. *See id*. § 53.056 (Vernon 2007). However, on appeal, LTF and Travelers' only specific complaint in regard to the pre-lien notice requirements related to amounts claimed

11

Initially, we must address the parties' dispute concerning whether there is any material distinction, for purposes of determining substantial compliance with the pre-lien notice requirements of chapter 53, to be made between notices directed by D&D to LTF, Lifetime Fitness, FCA, or any other Lifetime Fitness entity. LTF complains that D&D did not send any of its notices specifically to "LTF Real Estate Company, Inc.," which all parties now agree is the corporate entity that owns the property on which the project was constructed. LTF asserts on appeal that D&D sent required notices to FCA, which is an entity that is not a party to this appeal. LTF asks that we recognize a distinction, for purposes of reviewing substantial compliance with Chapter 53, between it, any other Lifetime Fitness entity that is located at the same Minnesota address, and FCA, which is also located at that same address.

It is undisputed that all of the Lifetime Fitness corporate entities discussed in the record (LTF, Lifetime Fitness, and others), as well as FCA, are located at the same street address in Chanhassen, Minnesota. Although it is undisputed that LTF is the entity that owns the property in question, the summary-judgment record indicates that, during the lifetime of the project, the parties generally referred to the owner of the property as "Life Time Fitness" or "Lifetime Fitness." In fact, the

for materials provided by D&D to J&G is that D&D failed to timely provide FCA notice by registered or certified mail concerning the unpaid materials. *See id*. LTF and Travelers have waived any other challenge.

12

general contract identifies the "owner" of the property as "Life Time Fitness," a corporate entity located at 2902 Corporate Place, Chanhassen, Minnesota 55317. There is no mention of LTF in this contract. The contract also identifies the contractor as FCA, located at the same "Lifetime Fitness" address in Minnesota.

The summary-judgment record demonstrates that "Lifetime Fitness" and FCA represented themselves to D&D as a single entity in regard to payment matters for the project. Neither LTF nor any other Lifetime Fitness entity made any effort to delineate that only one particular Lifetime Fitness entity or FCA was the appropriate contact for such matters pertaining to the project. Rather, the letterhead on correspondence that was directed to D&D regarding the project identified the relevant corporate contact as "FCA Construction Lifetime Fitness." Additionally, the signature line for the "Lifetime Fitness" representative who engaged in significant correspondence regarding the disputed payment matters with D&D, Sanaz Samie, identified Samie as an accounts payable clerk for "FCA Construction/Lifetime Fitness." Samie and other Lifetime Fitness representatives directed D&D to send correspondence to "FCA Construction/Lifetime Fitness." Samie's letters also identified her location as 2902 Corporate Place, Chanhassen, Minnesota 55317, which is the address at which the Lifetime Fitness entities and FCA are both located.

The corporate representative of LTF, Tim Lundgren, testified that both LTF and FCA are wholly owned subsidiaries of "Lifetime Fitness, Inc."  During his deposition, when referring to the owner of the property, he actually referred to the relevant corporate entity as "Lifetime Fitness Real Estate."  Lundgren agreed that the officers of LTF were also officers of FCA.  When asked about how to properly identify Lifetime Fitness, he stated that it was his practice to write both "Lifetime Fitness" and "Life Time Fitness when describing the activity."  Lundgren also agreed that at the time of the construction of the project, FCA did not have to submit change order requests to "LTF."  Lundgren explained that FCA only builds "Lifetime Fitness facilities" and, to his knowledge, there had never been any arbitration or litigation between "FCA" or "LTF," or a "lien filed by FCA on any Lifetime Fitness project."  And neither "Lifetime" nor LTF had ever required a payment or performance bond to be procured by FCA on any projects.

Based upon this evidence, as well as the ample evidence that Lifetime Fitness and FCA represented themselves to D&D as acting as both the owner or original contractor, we conclude that, for the purposes of determining compliance with chapter 53 of the Texas Property Code, any notice provided to a Lifetime Fitness entity or FCA at 2902 Corporate Place, Chanhassen, Minnesota 55317 constituted notice to both the "owner" or "reputed owner" and the "original

14

contractor."[9] *See Occidental Neb. Fed. Sav. Bank*, 773 S.W.2d at 688 (noting that in light of "scheme of interlocking corporate shells," "owner and contractor were, as a practical matter, the same people"); *Marathon Metallic Bldg. Co. v. Tex. Nat'l Bank of Waco*, 534 S.W.2d 743, 747 (Tex. Civ. App.—Waco 1976, no writ) (holding that claimant had substantially complied with statute despite incorrectly naming corporation as property owner when actual owners were corporation's officers and stockholders).[10]

We have outlined above the four sets of documents that D&D contends constitute pre-lien notices under section 53.056. We conclude that the September 11, 2008 and October 15, 2008 letters, sent to Lifetime Fitness/FCA, and the fax communications dated October 1 and 29, 2008 constitute second notices. TEX. PROP. CODE ANN. § 53.056(f) ("copy of the statement or billing in the usual and

---

[9] We again note that although FCA is not a party to this appeal, LTF makes arguments concerning lack of notice received by FCA. Because we have concluded that any notice provided to a Lifetime Fitness entity or FCA at the same Minnesota address constituted notice to both the "owner" or "reputed owner" and the "original contractor," we decline to consider whether LTF would be entitled to complain about the lack of notice provided to FCA.

[10] LTF and Travelers also challenge the notices provided by D&D, asserting that D&D's counsel filed with the trial court three certified mail receipt cards "knowing them to be forged." However, there is no evidence to substantiate the forgery allegations against D&D's counsel. Although there is evidence that certain certified mail receipts were altered after they were received, there is no evidence as to who altered the cards. The evidence also demonstrates that the card or cards to which the allegedly forged additions were made already referred to a Lifetime Fitness entity or FCA at the same Minnesota address. In light of our conclusion that Lifetime Fitness and FCA represented themselves to be one in the same, LTF and Travelers' unsubstantiated allegations of forgery are immaterial.

customary form is sufficient as notice under this section"). Thus, pursuant to section 53.056, which requires a subcontractor to provide notice not later than the 15th day of the second month following each month in which all or part of the materials were delivered, the September 11, 2008 notice would have been timely in regard to any materials delivered by D&D to J&G in July, August, and September 2008; the October 1, 2008 fax notice and the October 15, 2008 letter would have been timely in regard to any materials delivered by D&D to J&G in August, September, and October 2008; and the October 29, 2008 fax, which was provided after the 15th day of October, would only have been timely in regard to any materials delivered by D&D to J&G in September and October 2008. *See id.* § 53.051 ("To perfect the lien, a person must comply with this subchapter."). Thus, presuming that D&D complied with the other statutory requirements, D&D would have been entitled to recover a judgment for the unpaid balances that it, pursuant to section 53.056, timely presented to Lifetime Fitness/FCA in its pre-lien notices.

Neither party has made any substantial effort in their briefing to this Court to clarify the specific amounts that were timely disclosed in these pre-lien notices. LTF and Travelers assert that nothing was timely presented, while D&D asserts that amounts consistent with the amounts reflected on the lien were timely presented in these pre-lien notices. D&D does not cite to any affidavit testimony or other evidence that articulates the specific amounts timely disclosed, and our

16

review of the record raises fact questions that would have precluded the trial court from finding, as a matter of law, that D&D timely presented, in its four pre-lien notices, approximately $90,000 in unpaid balances pertaining to materials provided to J&G. This is because, in each of the pre-lien notices, there appear to be amounts that were not timely presented under section 53.056.

Regarding the September 11, 2008 notice, the attached balance statement refers to outstanding invoices for the months of August and September 2008, and the statement reflects a carry-forward balance of $76,038.12. Although the September 11, 2008 notice would have been timely for disclosure of unpaid balances for materials delivered in July, August, and September 2008, there is no explanation as to when the materials supporting the carry-forward balance were delivered. This raises the possibility that the September 11, 2008 notice presented amounts that were not timely disclosed pursuant to section 53.056. The October 15, 2008 notice presents similar problems. Although the October 15, 2008 notice would have been timely for any materials delivered in August, September, and October 2008, there is a carry-forward balance in the attached statement of $33,868.94, with no explanation as to when the materials for the carry-forward balance were delivered. The notice also references outstanding invoices for the months of June and July 2008, which would not have been timely presented by this notice. Similarly, the October 1, 2008 faxed notice, which would have been

17

timely for materials delivered in August, September, and October 2008, includes an invoice for an unpaid balance of over $9,000 for materials delivered in July 2008, which could not have been timely presented by that notice. Finally, the October 29, 2008 faxed notice, which would have been timely for materials delivered in September and October 2008, references significant unpaid balances for materials delivered in July and August 2008.

Many of these invoices and charges are likely reflected in multiple notices. Thus, we recognize that an unpaid balance that was presented untimely in one of the notices may have been presented timely in another. However, D&D did not present any evidence that established as a matter of law that it timely presented in its pre-lien notices unpaid balances of over $90,000 for materials delivered to J&G.[11] Because a portion of the trial court's judgment awarding damages to D&D was based upon unpaid balances for materials delivered by D&D to J&G, and because D&D did not demonstrate as a matter of law that it complied with section 53.056 for the *full* amount of damages the trial court awarded regarding the

---

[11]     D&D presented some evidence that it timely presented unpaid balances pertaining to materials delivered to J&G. But, D&D did not present evidence, through affidavit or otherwise, to establish, as a matter of law, that the specific amount of damages it sought were timely disclosed in these pre-lien notices. Donna Ortego's affidavit testimony related to notices that she "sent or caused to be sent," but she did not offer any factual explanation as to how D&D arrived at its damages figure in regard to the J&G lien. And, based upon the status of the record before us, we simply cannot say as a matter of law what amount of unpaid balances for materials that D&D delivered to J&G was timely presented by D&D's multiple pre-lien notices.

18

J&G lien, we hold that the trial court erred in granting summary judgment in favor of D&D for amounts related to materials delivered by D&D to J&G.

*Affidavit Claiming Lien*

A person claiming a lien must file an affidavit with the county clerk of the county in which the property is located not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues. *Id*. § 53.052(a). A subcontractor must timely file an affidavit that is signed by the person claiming the lien or another person on the claimant's behalf, and the affidavit "must contain substantially":

(1)     a sworn statement of the amount of the claim;

(2)     the name and last known address of the owner or reputed owner;

(3)     a general statement of the kind of work done and materials furnished by the claimant and, for a claimant other than an original contractor, a statement of each month in which the work was done and materials furnished for which payment is requested;

(4)     the name and last known address of the person by whom the claimant was employed or to whom the claimant furnished the materials or labor;

(5)     the name and last known address of the original contractor;

(6)     a description, legally sufficient for identification, of the property sought to be charged with the lien;

(7)     the claimant's name, mailing address, and, if different, physical address; and

(8)   for a claimant other than an original contractor, a statement identifying the date each notice of the claim was sent to the owner and the method by which the notice was sent.

*Id*. § 53.054(a).

On November 19, 2008, D&D filed an Affidavit Claiming Lien, which D&D asserts pertains to its claim for materials provided to J&G.[12]  In regard to the statutory requirements pertaining to the time of filing, D&D presented evidence that it delivered materials to J&G that were incorporated into the Lifetime Fitness project as late as November 2008.   For purposes of considering the timeliness of the filing of the affidavit, indebtedness accrues "on the last day of the last month in which labor was performed or the material furnished." *See id*. § 53.053(c).  Thus, the indebtedness pertaining to the materials provided to J&G accrued on the last day of November 2008.  Accordingly, D&D's November 2008 affidavit was timely filed to the extent that it pertained to indebtedness accruing from materials provided to J&G.

We now turn to the substance of D&D's Affidavit Claiming Lien, which was purportedly filed in regard to materials delivered to J&G.  In the affidavit, D&D stated that it furnished labor and materials for an improvement located at "Life Time Fitness, 13600 Will Clayton Parkway, Humble, Texas 77346"; "Life Time

---

[12]   As explained below, we make this qualification because the affidavit itself does not identify J&G.

Fitness" is the owner of the land and improvements; FCA, located at 2902 Corporate Place, Chanhassen, Minnesota 55317, was the general contractor for the improvement; the "kind of work furnished by D&D [was] the supplying of Underground Utility materials"; the "amount paid for the construction, labor and materials and due and owing [sic] $90,414.12 is true, correct, and just, and with all just and lawful offsets, payments, and credits know to the undersigned allowed"; and D&D "sent notices" to "FCA/Life Time Fitness" by certified mail. D&D also identified itself as the claimant and provided its address. Thus, D&D complied, in several respects, with section 53.034. *See id*. § 53.054(a)(1), (2), (5), (6), and (7).

However, D&D did not, anywhere in the affidavit, set forth "a statement of each month in which the work was done and materials furnished for which payment is requested," the name and last known address of the person to whom the claimant furnished the materials or labor," or a statement identifying the date each notice of the claim was sent to the owner and the method by which the notice was sent. *See id*. § 53.054(a)(3), (4), (8). In response to these deficiencies, D&D argues that there was no resulting prejudice because it had already provided pre-lien notices that included the month and description of materials delivered. Thus, D&D asserts it substantially complied with chapter 53's requirements.

Other Texas courts that have considered substantial-compliance issues under chapter 53 "have distinguished between mere technical defects, which can be

21

excused, and those defects that are more substantive in nature and, if overlooked, would read a provision out of the statute or prejudice another party." *Mustang Tractor & Equip. Co.*, 263 S.W.3d at 441. For example, in *Mustang Tractor*, the court considered an affidavit that contained all of the information required by section 53.054 except a statement identifying the date each notice of the claim was sent to the owner and the method by which the notice was sent. *Id*. After noting that the contractor had provided the owner with the requisite pre-lien notices, which identified the date and method by which they were sent, and after further noting that there was no allegation that the owner did not receive actual notice of the claims in a timely manner, the court held that the affidavit's omission of the date and method by which the notices were sent constituted "a mere technical error." *Id*. The court reasoned that "because there [was] no risk that anyone was misled to his prejudice as a result of such omission," the lien affidavits substantially complied with chapter 53. *Id*. at 444.

Similarly, in *Richardson v. Mid–Cities Drywall, Inc.*, the court held that although the mailing address of the claimant did not appear in the sworn portion of the affidavit, the claimant had substantially complied with chapter 53 because the address appeared in the filing "as the address to which the document was to be returned by the clerk after it was recorded" and in "the attachment prepared by the county clerk as part of the official record specifying the index date and providing a

22

receipt." 968 S.W.2d 512, 515 (Tex. App.—Texarkana 1998, no pet.); *see also New AAA Apartment Plumbers, Inc. v. DPMC–Briarcliff, L.P.*, 145 S.W.3d 728, 730 (Tex. App.—Corpus Christi 2004, no pet.) (holding that claimant substantially complied with chapter 53 by sending copy of lien affidavit to property owner before, rather than after, affidavit was filed, and noting that "the purpose of the statute was fulfilled").

In contrast, in *Milner v. Balcke-Durr, Inc.*, the court held that an affidavit that did not reference the months in which work was performed did not comply with chapter 53 and, thus, the claimant's non-compliance precluded recovery by the purported lienholder. No. 03-05-00547-CV, 2006 WL 2190516, at *3 (Tex. App.—Austin Aug. 4, 2006, no pet.) (mem. op.). The court concluded that the omitted information was "essential to perfection of [the] statutory lien and to [the] claim against the indemnity bond. *Id.* Similarly, in *Mainline Industrial Services, Inc. v. Inland Enterprises, Inc.*, the court held that "the omission of the owner's name and address alone" caused "the lien affidavit to fail as a matter of law." No. 06-00-00020-CV, 2001 WL 455843, at *3 (Tex. App.—Texarkana May 2, 2001, no pet.)

Although we are mindful that mechanic's and materialman's statutes are to be liberally construed to protect laborers and materialmen, we find no support in the case law for concluding that the affidavit filed by D&D that pertained to the

materials it provided to J&G substantially complied with chapter 53's requirements. Most significantly, the affidavit contains absolutely no reference to J&G, the contractor to whom D&D asserts that it furnished the materials for which it was seeking payment. This omission is even more significant in light of the additional omissions from the affidavit, including the omission of a statement of the months in which D&D furnished materials to J&G for which it was seeking payment. We recognize that other courts have relied upon the substantial compliance standard to excuse the omission of the date of notice and method of service under chapter 53. *See Mustang Tractor & Equip. Co.*, 263 S.W.3d at 441. A court has also excused the omission of the mailing address of the claimant from the sworn portion of the affidavit. *See Richardson*, 968 S.W.2d at 515. However, no court has ever excused the omission of the name of the party to whom materials were furnished, which is the basis for securing the lien in the first place; this cannot be considered a mere "technical defect."

D&D argues that there was no prejudice resulting from the omission because it had disclosed the information in its pre-lien notices. However, if we accepted D&D's argument, we would be reading out a provision of the statute that, on its face, is of critical importance for providing, through a publicly-filed document, clear identification of the claim that is basis for the filing of the lien. If the multiple pre-lien notices and attached invoices and statements could be used to

24

satisfy these statutory requirements, then the obvious purpose for requiring a lienholder to identify both when and to whom it furnished materials for which it needed to be paid would be frustrated.

In sum, the identity of the party to whom the materials were allegedly furnished and for which the claimant is seeking payment constitutes a material and "essential" component of a lien affidavit filed pursuant to section 53.054(a).[13] *See Milner*, 2006 WL 2190516, at *3. Accordingly, we hold that, by omitting this information, as well as the information pertaining to the months in which D&D furnished materials for which it claimed payment, D&D failed to substantially comply with chapter 53 and the trial court erred in granting D&D summary judgment on its claims for damages pertaining to the materials it delivered to J&G. We further hold that the trial court erred in denying LTF and Travelers' summary-judgment motion regarding D&D's claims against it for damages pertaining to the materials that it delivered to J&G.

### *The Houston Earthworks Lien*

LTF and Travelers argue that the Houston Earthworks lien is not valid and enforceable because D&D failed to timely provide FCA, by registered or certified mail, notice concerning the unpaid materials provided to Houston Earthworks, *see* TEX. PROP. CODE ANN. § 53.056; D&D failed to timely provide LTF, by registered

---

[13] We note that the bond itself obtained by LTF Real Estate does not identify J&G.

or certified mail, with a "90 Day Fund Trapping Notice" concerning the unpaid materials provided to Houston Earthworks, *see id.*; D&D's Affidavit Claiming Lien failed to provide the name and last known address of the owner or reputed owner of the property in question, the description of the material sold to Houston Earthworks, and a statement of each month in which the material was allegedly sold for which payment is requested, *see id.* § 53.054(a); and D&D failed to timely provide LTF and FCA, by registered or certified mail, a copy of its Affidavit Claiming Lien, *see id.* § 53.055.

### *Pre-Lien Notice*

As noted above, section 53.056 provides that in order for a lien to be valid, a claimant like D&D must provide a pre-lien notice of unpaid balances by registered or certified mail to "the original contractor" at its last known addresses no "later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered"; it must also "give the same notice to the owner or reputed owner and the original contractor not later than the 15th day of the third month following each month in which all or part of the claimant's labor was performed or material or specially fabricated material was delivered." *Id.* § 53.056(b).

D&D presented summary-judgment evidence that on July 15, 2008, it sent to "Owner" Lifetime Fitness/FCA and "General Contractor" FCA, both at the same

Minnesota address, a letter, entitled "Notice of Claim Demand for Payment." "re: the Lifetime Fitness in Humble, Texas." In the letter, D&D stated that it was providing notice in compliance with chapter 53 that Houston Earthworks was indebted to D&D in the amount of $33,634.33 "for the sale and delivery of underground utility products" and, in the event payment was not received by August 15, 2008, D&D would file an Affidavit Claiming Lien on the property. D&D attached to this letter a "sworn statement of account" that Houston Earthworks was indebted to D&D. And, attached to the sworn statement is a statement referencing invoices for materials delivered by D&D to Houston Earthworks for the months of April, May, June, and July 2008. The statement reflects an outstanding balance of $33,634.33. Also attached to D&D's letter is a certified mail receipt signed by an "agent" on July 18, 2008 with the address identified as "Lifetime Fitness/FCA" at the Minnesota address.[14]

D&D also presented summary-judgment evidence that on August 15, 2008, it sent to "Owner" Lifetime Fitness and "General Contractor" FCA, both at the same Minnesota address, another letter entitled "Notice of Claim Demand for Payment regarding the Lifetime Fitness in Humble, Texas." In the letter, D&D stated that it was providing notice in compliance with chapter 53 that Houston

---

[14] D&D acknowledges that it did not timely present the unpaid balances for April 2008 and, thus, the total amount it sought pertaining to the Houston Earthworks lien was $33,363.70.

Earthworks was indebted to D&D in the amount of $34,088.49 "for the sale and delivery of underground utility products" and, in the event that payment was not received by September 15, 2008, D&D would file an Affidavit Claiming Lien on the property. D&D attached to this letter (1) a "sworn statement of account" that Houston Earthworks was indebted to D&D, (2) a statement referencing invoices for materials delivered by D&D to Houston Earthworks for the months of April, May, June, and July 2008, which reflected an outstanding balance of $34,088.49, and (3) a certified mail receipt addressed to "Lifetime Fitness/FCA" at the Minnesota address signed by an "agent" on August 19, 2008.[15]

D&D also presented summary-judgment evidence that on July 14, 2008, it faxed to Lifetime Fitness or FCA copies of invoices for materials it had delivered to Houston Earthworks in April, May, June, and July 2008. In her affidavit, Ortego testified that she personally sent or caused to be sent the fax. The fax cover sheet indicates that the fax was sent to a fax number that was the same as that for Sanaz Samie, the accounts payable clerk for "FCA Construction/Lifetime Fitness." Although there is not a total provided for all of the invoices, the face of the invoices reflect an outstanding total amount of over $30,000. D&D also presented summary-judgment evidence that on September 25, 2008, Ortego faxed to the fax

---

[15]     Unlike the statements attached to D&D's pre-lien notices pertaining to J&G, the statement attached to these notices do not reference unexplained carry-forward balances.

number provided for "FCA Construction/Lifetime Fitness" a copy of D&D's statement detailing invoices for materials delivered to Houston Earthworks. The statement references materials provided from April to July 2008 and reflects a total outstanding balance of $33,634.33. Finally, D&D presented summary-judgment evidence that on October 29, 2008, it faxed to "FCA Construction/Lifetime Fitness" a copy of all the invoices for materials delivered to both Houston Earthworks and J&G. Included with this fax was a summary of the "invoices for Houston Earthworks Resources, Inc.: Lifetime Fitness," which reflects a total "open balance" of $33,634.33, derived from invoices from April, May, June, and July 2008.

As explained above, the notices provided to either a Lifetime Fitness entity or FCA at the same Minnesota address can be considered as constituting notice to the other. Moreover, the July 15, 2008 cover letter was addressed to both Lifetime Fitness and FCA, and we have rejected LTF's arguments that D&D did not substantially comply with chapter 53 because it sent notices to Lifetime Fitness rather than LTF.[16] Accordingly, we hold that D&D presented summary-judgment

---

[16]     LTF asserts in its briefing that "D&D *concedes* that it failed to provide the requisite 60 and 90 day notices to both LTF and FCA relative to Houston Earthworks' alleged unpaid materials." (Emphasis added.) It also asserts that "D&D *admittedly failed* to provide LTF and FCA with all pre-lien notices required by this statute via certified or registered mail." (Emphasis added.) LTF offers no citation to the record to support these alleged concessions. And our review of the

29

evidence establishing that, with its July 15, 2008 letter, it timely provided notice pursuant to section 53.056 regarding materials that D&D provided to Houston Earthworks in May, June, and July 2008 and D&D had an unpaid balance for these materials in the amount of $33,363.70.[17]

### *Affidavit Claiming Lien*

As noted above, a person claiming a lien must file an affidavit with the county clerk of the county in which the property is located not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues. *See id*. § 53.052(a). And the affidavit "must contain substantially," among other things, a sworn statement of the amount of the claim; the name and last known address of the owner or reputed owner; a general statement of the kind of work done and materials furnished and a statement of each month in which the work was done and materials furnished; the name and last known address of the person to whom the claimant furnished the materials or labor; the name and last known address of the original contractor; and a statement identifying the date each notice

---

record contradicts LTF and Travelers' assertions that such concessions have been made during the course of this litigation.

[17] To the extent that LTF and Travelers complain that D&D's July 15, 2008 letter could not constitute both notices referenced in section 53.056, nothing in the plain language of the statute would suggest support for such an argument. Rather, case law indicates that such notice would substantially comply with chapter 53's notice requirements. *See Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 466 (Tex. App.— Houston [1st Dist.] 2007, pet. denied) (concluding that notification of affidavit required by section 53.055 could be provided before lien actually filed").

of the claim was sent to the owner and the method by which the notice was sent. *See id*. § 53.054(a).

Here, D&D presented in the summary-judgment record a copy of its Affidavit Claiming Lien file-stamped on October 21, 2008. For the purpose of considering the timelines of the filing of the affidavit, indebtedness accrues "on the last day of the last month in which labor was performed or the material furnished." *See id*. § 53.053(c). Thus, the indebtedness pertaining to the materials provided to Houston Earthworks accrued on the last day of July 2008 and D&D's October 2008 affidavit was timely filed to the extent that it pertained to indebtedness accruing from materials provided to Houston Earthworks.

We now turn to the substance of D&D's Affidavit Claiming Lien pertaining to Houston Earthworks. In the affidavit, D&D stated that it furnished labor and materials for an improvement located at "Life Time Fitness, 13600 Will Clayton Parkway, Humble, Texas 77346"; "Life Time Fitness/FCA" is the owner of the land and improvements; "Houston Earthworks Resources Inc," located at a stated address in Tomball, Texas, was the general contractor for the improvement; the "kind of work furnished [was] the supplying of Utility pipe materials"; the "amount paid for the construction, labor and materials and due and owing [sic] $34,088.49 is true, correct, and just, and with all just and lawful offsets, payments, and credits known to the undersigned allowed"; and D&D "sent notices" to "Life

31

Time Fitness, FCA" by certified mail at the Minnesota address.  D&D also identified itself as the claimant and provided its address.   Thus, D&D's Houston Earthworks affidavit complied, in several respects, with section 53.034. Additionally, LTF and Travelers' assertion that the affidavit did not set forth the name and last known address of the owner or reputed owner and the description of the material sold to Houston Earthworks is refuted by the face of the affidavit.  The affidavit sets forth the Minnesota address for Lifetime Fitness and is not defective for failing to identify LTF as the corporate entity that owned the property. The affidavit also provided a basic description of the kind of material that D&D provided.

However, the affidavit, contrary to section 53.054(a)(3), did not set forth the months that D&D delivered the materials to Houston Earthworks for which it remained unpaid.  D&D asserts that, in light of the fact that Lifetime Fitness and FCA had "actual notice" of this information from its pre-lien notices, LTF was "not prejudiced by this technical omission on the lien."   At least one court has addressed an affidavit's omission of this kind of information.  *See Milner*, 2006 WL 2190516, at *3.  As noted above, in *Milner*, the court held that an affidavit that did not reference the months in which work was performed and for which payment was being demanded did not comply with chapter 53.  *Id*.  The court concluded that such information was "essential to perfection of [the] statutory lien and to [the]

32

claim against the indemnity bond. *Id*. We agree with the reasoning set forth in *Milner* and conclude that information pertaining to the months for which the claimant is seeking to recover unpaid balances for materials delivered is an essential part of the affidavit. Although we remain mindful of the substantial-compliance standard, this information, like the information identifying the party to whom the materials were furnished, is critical to establishing the validity of the lien. Although D&D established through summary-judgment evidence that it provided multiple pre-lien notices with attached statements and invoices reflecting an outstanding balance for materials provided to Houston Earthworks, the affidavit itself did not indicate the specific months for which it remained unpaid.

Accordingly, we hold that, by omitting this information, D&D failed to substantially comply with chapter 53 and the trial court erred in granting D&D summary judgment on its claims for damages pertaining to the materials it delivered to Houston Earthworks. We further hold that the trial court erred in denying LTF and Travelers' summary-judgment motion regarding D&D's claims against it for damages pertaining to the materials that it delivered to Houston Earthworks.

We sustain the portions of LTF and Travelers' first and second issues in which they contend that D&D did not perfect its mechanic's and materialman's liens concerning J&G and Houston Earthworks.

33

## Attorney's Fees

In a portion of their third issue, LTF and Travelers argue that the trial court erred in awarding D&D its attorney's fees because "D&D is precluded from recovering attorney's fees on claims on which it did not prevail."

A trial court may award reasonable costs and attorney's fees "in any proceeding to foreclose a lien or to enforce a claim against a bond" or "in any proceeding to declare that any lien or claim is invalid or unenforceable." *Id*. § 53.156 (Vernon Supp. 2011).

Attorney's fees may be recovered only when they are provided for by statute or by contract between the parties. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). In order to show that attorney's fees are reasonable and necessary, a plaintiff is required to show that the fees were incurred while suing the defendant on a claim which allows for the recovery of such fees. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). If the plaintiff is unsuccessful on such a claim, it is not entitled to recover its attorney's fees. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Because D&D is not the prevailing party, it cannot recover on its claim for attorney's fees. *See Ruiz v. Stewart Mineral Corp.*, 202 S.W.3d 242, 250 (Tex. App.—Tyler, 2006, pet denied).

We sustain the portion of LTF and Travelers' third issue in which they contend that the trial court erred in awarding D&D attorney's fees.

## Conclusion

We reverse the judgment of the trial court and render judgment that D&D take nothing on its claims.


Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.